**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Louis WAGNER, Defendant-Appellant.**

**No. 72-1512.**

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 12, 1973.

Decided March 12, 1973.

Rehearing Denied April 27, 1973.

John C. Humpage, Topeka, Kan., for defendant-appellant.

Kirby Patterson, Washington, D. C. (Robert J. Roth, U. S. Atty., D. Kan., George S. Kopp, Atty., and James Twitty, Sp. Atty., Dept. of Justice, on the brief), for plaintiff-appellee.

Before MURRAH, SETH and BARRETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal by Louis Wagner from judgments of conviction by a jury on two counts of attempting and conspiring to introduce, and of actually introducing, contraband amphetamine drugs into the United States Penitentiary at Leavenworth, Kansas, in violation of 18 U.S.C. §§ 2, 371, and 1791.[1]

It is undisputed that a conspiracy existed, and that drugs were smuggled illegally into the penitentiary. The decisive question here is whether the evidence presented was sufficient to prove that Wagner was a party to the plot. The evidence consisted of the testimony of co-conspirators, and of Wagner's name endorsed on a check from a co-conspirator. The sufficiency of this evidence turns on the admissibility of the co-conspirators' implicating testimony, and this depends upon proof that Wagner did, indeed, cash the check. He denies doing so, hence, his complicity in the conspiracy hinges largely upon the identification of his endorsement on the co-conspirator's check.

On trial; the court admitted records from other court cases bearing signatures of Wagner's name, for use as comparisons with the endorsement on the check. Using these records and handwriting exemplars given by Wagner as standards for comparison, a qualified handwriting expert testified that the endorsement on the co-conspirator's check

1. Section 2 provides that whoever causes to be committed or commits an offense against the United States is punishable as a principal. Section 371 provides that if two or more persons conspire to commit any offense against the United States, or to defraud the United States or any agency thereof, and one or more of such persons act in furtherance of the conspiracy, each shall be fined a maximum of $10,000 or imprisoned not more than five years, or both, unless the offense is a misdemeanor. Section 1791 provides in presently material part that anyone who, in contravention of any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce anything into or upon the grounds of any Federal penal or correctional institution shall be imprisoned not more than ten years.

was Wagner's signature. Wagner contends the signatures on the records used for these comparisons were not properly authenticated, and, therefore, should not have been used for the comparison.

■ To be admissible and usable as a standard of comparison, for the purposes of opinion evidence on a questioned writing, the specimen must first be authenticated. Authentication means proof of authorship, and whether a writing has been properly authenticated is a matter for the court to decide, according to no precise formula, but based upon proof to its satisfaction. *See, e.g.,* Withaup v. United States, 127 F. 530, 535 (8th Cir. 1903); and United States v. White, 444 F.2d 1274, 1280 (5th Cir. 1971).

The crucial question of authorship in our case is presented in these precise circumstances. When the documents were first offered, Wagner's counsel objected to their admission, for lack of authentication. Pursuant to a colloquy between court and counsel, the documents were, however, finally admitted as public records, without any determination of the genuineness of the signatures thereon. Wagner's counsel agreed to their admission as such, with the observation that he would "fight it out with the handwriting expert." Several admittedly genuine exemplars of Wagner's signature were also admitted, along with the check bearing the questioned endorsement.

When the expert was called, he stated that he had previously examined, for purposes of comparison, all of the exhibits, i.e. the endorsed check, the signature exemplars, and the public records. When the expert was asked if he had an opinion as a result of the examination, counsel objected, and was granted permission to ask a preliminary question. The witness was then asked if the opinion he would give was confined singularly to the exemplar, and whether he could state an opinion without utilizing the signature on the public records. When the expert answered that he would need the signatures on the public records to form an opinion, Wagner's counsel objected to the expert's opinion on grounds that the signatures on the public records had not been authenticated. The court thereupon observed that "[i]t was admitted by the court because it was a public document that showed what purported to be the signature . . . . The only relevance is the purported signature on a public document. And the document purports to have the signature of the defendant Wagner upon it." The objection was overruled, and the expert witness proceeded to testify that he made a "side-by-side comparison" of the endorsement on the check "with the known material," i.e. the public documents and the exemplar. At this point the court intervened to instruct the jury in conventional language concerning the weight to be given expert testimony. The expert witness was then permitted to express the opinion that the questioned endorsement on the check was prepared by the writer of the material found on the other exhibits. He further testified that the exemplars were in and of themselves reason to believe that Mr. Wagner endorsed the check, but because of Mr. Wagner's "fluid handwriting style, . . . it was necessary" to resort to the "undictated handwriting," i.e. the public documents; considering the exemplars and the public documents together, he was able to determine that the questioned check was, indeed, signed by Mr. Wagner.

■ It is, thus, manifest that the handwriting expert's opinion is based, in part, upon a comparison of signatures not proved to be genuine or admitted into evidence as such. The trial court's ruling admitting Wagner's "purported" signature as a standard of comparison clearly indicates that the court misconceived the established rule governing authentication in cases of this kind. Not having been proved to be genuine, the signatures on the public documents were inadmissible as standards of comparison. In these circumstances the foundation for the expert's opinion cannot stand,

and his opinion falls with it. The opinion evidence was erroneously admitted, it was prejudicial, and the case must, accordingly, be reversed for a new trial.