**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Craig MUNDT, Defendant-Appellant.**

**No. 74–1230.**

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 11, 1974.

Decided Dec. 26, 1974.

Rehearing Denied Jan. 17, 1975.

Certiorari Denied April 28, 1975.

See 95 S.Ct. 1682.

here supplemented insofar as they pertain to the appellant Mundt.

The associations between Mundt, Greenspan, Merkowitz, Smaldone and Nocenti commenced in the spring of 1972. The association was for the importation of cocaine. Unknown to the others, Nocenti was a government informer. The idea was that Mundt and Greenspan were to buy the cocaine in Peru and Nocenti was to bring it through customs. Merkowitz and Smaldone each contributed about $9,000 to the purchase price.

On May 12 Nocenti traveled to Lima, Peru with Agent Doll. Very soon after arrival he met one Laurence Katz, Special Agent in Charge of the Drug Enforcement Administration office in Lima and who was attached to the American Embassy. Nocenti met Katz several times in Lima. On about May 20 Mundt and Greenspan met Nocenti there. It was arranged on May 27 that the cocaine was to be delivered by Mundt to Nocenti. On the night in question the room next to that of Nocenti was being monitored by Katz and several officers of the Peruvian Investigative Police. When Mundt and Nocenti went to the room with the cocaine, the Peruvian officers entered and arrested Mundt. They also went through the motions of arresting Nocenti. They seized the containers of cocaine and took them into the next room where Katz field tested them and determined that it was cocaine. Greenspan was arrested outside the hotel. Katz visited Mundt at the Peruvian Police Headquarters and talked to him. Mundt was confined, and during the next 24 hours one Major Arrarte of the Peruvian Police Force intermittently questioned Mundt. Arrarte was able to speak English and Mundt was not able to speak Spanish. Arrarte took a statement from Mundt and translated it into Spanish. Mundt was tried in Peru and was in a prison there for over a year.

The trial in this case started January 28, 1974 and culminated in a verdict of guilty on January 30. Merkowitz and

Arthur H. Bosworth, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Natalie S. Ellwood, Denver, Colo., for defendant-appellant.

Before SETH, BARRETT and DOYLE, Circuit Judges.

**WILLIAM E. DOYLE, Circuit Judge.**

This is a companion case of United States v. Smaldone, decided August 14, 1973, 484 F.2d 311 (10th Cir. 1973).* As in *Smaldone*, we are asked to review and reverse a conviction of conspiracy to import cocaine, contrary to 21 U.S.C. §§ 952(a) and 963. The facts are set forth in the *Smaldone* opinion and are

* Cert. Denied, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974).

Smaldone had, of course, been convicted prior to the Mundt trial.

Numerous contentions on behalf of Mundt are made. They are, first, that the trial court erred in failing to suppress Mundt's statement to Major Arrarte in Peru; second, that the court erred in admitting evidence of the delivery of the cocaine to Smaldone. It is said that this occurred after the arrest of defendant and involved actions of third persons.

In addition to the above contentions there are subsidiary points. These include:

A. The trial court's denial of defendant's motion for funds to enable an investigator to go to Peru at government expense under the Criminal Justice Act, 18 U.S.C. § 3006A(e).

B. The refusal of the trial court to grant to the defendant an investigator as a deprivation of rights under the Sixth Amendment.

C. Refusal of the court to dismiss the case because the schedules of controlled drugs had not been updated and republished as required by 21 U.S.C. § 812(a).

D. The trial court's denial of a continuance. It is said that this undermined the preparation of the defense.

E. The failure of the trial court to rule that the chain of evidence was not established. It is contended that on that account the cocaine should have been excluded.

F. The action of the court in receiving photographs. It is said that these were secondary evidence.

## I.

### WHETHER THE COURT ERRED IN RECEIVING MUNDT'S STATEMENT GIVEN TO OFFICER ARRARTE IN PERU

The officer had received training in the United States and knew about the *Miranda* warnings but did not give them because under Peruvian law this is not required. It also appears that Mundt requested an attorney but was told that under Peruvian law he was not allowed to have one present during the questioning.

The cases are unanimous in holding that a warning is not essential to the validity of a confession which has been given in a foreign country. *See* United States v. Chavarria, 443 F.2d 904 (9th Cir. 1971). *See also* Kilday v. United States, 481 F.2d 655 (5th Cir. 1973); United States v. Welch, 455 F.2d 211 (2d Cir. 1972); United States v. Nagelberg, 434 F.2d 585 (2d Cir. 1970), cert. denied, 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971).

The trial court did find that the statement was voluntarily given, and it also submitted the issue of voluntariness to the jury. Furthermore, there is not evidence to establish or suggest that the statement was involuntary. True, it was taken over a period of 24 hours, but during that time there were no threats or coercion and no deprivation of food, sleep or toilet facilities.[1]

So, therefore, the only question which we need consider is whether the participation by the American authorities was so extensive as to require that the statements be excluded. Defendant's position is that any participation by American authorities makes the effort a joint venture and renders the *Miranda* rule applicable. The trial court found that the United States' preliminary participation through Katz was not sufficient to warrant exclusion of the statement. The judge specifically found that Katz was merely coordinating with the foreign officers and was not at that time seeking evidence for use in an American case. The Katz testimony was that he had helped plan the operation but that General Serango of the Peruvian Police was in ultimate control. Katz did not actually participate in the arrest of Mundt and Greenspan. Katz indeed played a substantial part in the events

---

1. Mundt did testify outside the presence of the jury that he had been beaten and threatened, but the court found otherwise.

which led up to the arrest of Mundt, but once the arrest was made the Peruvian Police took over and their investigative efforts led to an independent prosecution. This latter supports the conclusion that these men were not acting as agents for the United States. Clearly they were not mere instruments of United States officials. The test, according to our view, is not whether American officers have played a substantial role in events leading up to the arrest. Nor is the test a question of joint venture as asserted by appellant. This is a vague, indefinite term and is, in our view, unreliable. The trial court found that Katz merely cooperated with the Peruvian Police and this finding is supported by the evidence.

## II.

## THE QUESTION WHETHER THE EVENTS WHICH OCCURRED AFTER MUNDT'S ARREST WERE ADMISSIBLE

Appellant was arrested in Peru on May 27. Despite the arrest, the cocaine seized was shown at trial to have been carried from Lima, Peru to Denver and delivered to Merkowitz and Smaldone. We here consider the appellant's objection that the evidence of these events occurring subsequent to his arrest was irrelevant.

It is true that the government moved to strike the overt act allegation, describing these subsequent events, from the Mundt indictment. The court granted this. The government maintains that it was not relying on this overt act to evidence Mundt's participation in the conspiracy. The court did not strike the testimony which had been offered with respect to the subsequent events. Indeed, defendant did not move to strike this evidence.

Drug agents Doll and Dunne testified with respect to delivery of the cocaine to Smaldone and the cocaine thus seized was received in evidence in order to establish the general conspiracy. It is necessary, of course, to identify the material seized as cocaine.

Merkowitz and Nocenti also testified at the trial concerning these events. Merkowitz described a telephone call with Smaldone in which he notified the latter that Nocenti had arrived. He also testified as to a conversation with Nocenti as to Nocenti's arrival from Peru and he further testified as to a telephone conversation with Nocenti on May 30 saying that the cocaine had arrived. He gave further testimony as to his going to the Sheraton and picking up the cocaine, at which time he was arrested.

Nocenti testified as to his arrival in Denver on the 29th and of his contacting Merkowitz and arranging a meeting, following which the cocaine was delivered to Merkowitz and Merkowitz was arrested. Subsequently, he delivered cocaine to Smaldone who was also arrested.

It would appear from the trial court's rulings that all of these events which occurred subsequent to appellant's arrest were received for a limited purpose which was to show that the cocaine had been imported into the United States and had been delivered to Merkowitz and Smaldone. The relevance of this evidence from the standpoint of the appellant was the fact of delivery.

■ Since the evidence was offered for the limited purpose of showing importation and for the purpose of completing the chain of possession of the evidence and not for the purpose of implicating appellant as a member of the conspiracy, we are unable to find that the reception violated any rule of evidence. Indeed, the trial court charged the jury that

. . . A defendant cannot be held criminally liable for substantive offenses committed by members of a conspiracy before the defendant had joined or after he had withdrawn from the conspiracy.

The effect of this instruction was to advise the jury that the defendant could not be implicated by events which oc-

curred after he had withdrawn from the conspiracy.

The usual objection to testimony subsequent to the termination of the conspiracy as to the accused on trial is concerned with hearsay statements made by one co-conspirator which tend to implicate the co-conspirator with respect to whom the conspiracy has terminated. This was the problem in Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). *See also* the discussion and citations in United States v. Mares, 260 F.Supp. 741 (D.Colo.1966), rev'd on other grounds, 383 F.2d 805 (10th Cir. 1967), cert. denied, 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969).

We recognize the seriousness of the problem of receiving testimonial statements after the termination of the conspiracy. In that circumstance the conspirator uttering the statement is no longer the agent for the person whose part in the conspiracy has ended. But it is not the testimonial problem with which we are here confronted. The evidence as to the events after the arrest of appellant did not consist of testimonial utterances; it did not go to the defendant's personal involvement. Rather, it tended to establish the general conspiracy. For this purpose it was relevant and admissible. Accordingly, we see no merit in the present contention.

### III.

### THE SUBSIDIARY POINTS

A. *The Denial of Defendant's Motion to Hire an Investigator.*

■ Defendant's argument is that the refusal of the court to authorize an investigator to go to Peru constituted a violation of 18 U.S.C. § 3006A(e). The maximum amount authorized is $300.00 for this purpose. To get more it is necessary for the chief judge of the circuit to approve it. Defendant did not make a strong showing as to necessity. He said that an investigator could acquire

facts which could support his contention that he had been mistreated by the Peruvian Police, but he was unable to state what he expected specifically to find, and he was unable to show that he had exhausted any other effort except to send the investigator to Peru. Another factor was that it was his desire to send his fiancee on the trip. The court would have allowed the $300.00 had defendant been able to make any showing.

Our court has held that it is essential when requesting investigative services to show specifically the reasons why such services are necessary. *See* Christian v. United States, 398 F.2d 517 (10th Cir. 1968).

Finally, we see no violation of the Sixth Amendment based on the denial of investigative services. *Cf.* Christian v. United States, *supra,* at 519, fn. 7.

B. *The Failure to Republish the List of Controlled Substances.*

■ Because the republication of the controlled substances as required by 21 U.S.C. § 812(a) was not carried out exactly within the two-year period, but was about two weeks late, defendant contends that cocaine was not a controlled substance during the time prior to May 12, 1972. He would give no effect to the fact that the republication was stated to be effective April 27, 1972. In any event, it was a controlled substance when the conspiracy was commenced and also during the period that Mundt was in Peru, so we see no merit in this contention whatsoever.

C. *The Denial of a Continuance.*

■ On January 24, 1974, a few days before the trial was to commence, defendant moved for a continuance. The court painstakingly heard the reasons advanced and denied the motion for failure to show that tangible evidence helpful to the defendant could be obtained and presented. The matter was peculiarly subject to trial court discretion,

and we see no abuse of this discretion. *See* Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); United States v. Spoonhunter, 476 F.2d 1050 (10th Cir. 1973).

D. *Adequacy of the Chain of Possession.*

■ We have examined this issue and find that, as did the trial court, the evidence was adequate and that there was no proof of tampering. Here again, there was no abuse of discretion on the part of the trial court in receiving the various links.

E. *The Receipt of the Copies of Photographs.*

■ The pictures of the articles taken from appellant's possession by the Peruvian Police were received, and it is contended that the actual articles should have been brought in. Conceding that it is preferable to have the originals, we see no error in receiving the photographs since the actual articles and the original photographs are in the custody of the Peruvian court. It is not argued, however, that these did not depict the objects which they purported to show, and where this is the situation the matter is one of trial court discretion. *See* United States v. Wagner, 475 F.2d 121 (10th Cir. 1973); United States v. Merrick, 464 F.2d 1087 (10th Cir.), cert. denied, 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314 (1972); United States v. Ketchum, 445 F.2d 860 (10th Cir. 1971); Wood v. United States, 357 F.2d 425 (10th Cir.), cert. denied, 385 U.S. 866, 87 S.Ct. 129, 17 L.Ed.2d 94 (1966); Hollingsworth v. United States, 321 F.2d 342 (10th Cir. 1963).

The desirability of having the objects rather than photographs cannot be denied, but trials are imperfect and where, as here, the presiding judge has determined that the photographs are accurate and trustworthy, there is little to review.

The judgment is affirmed.