**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 11 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

CHARLES GARY HENRY,

       Defendant-Appellant.

No. 97-8116

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 97-CR-62)**

Drew A. Perkins, Blood & Perkins, P.C., Casper, Wyoming, for Defendant-Appellant.

James C. Anderson, Assistant United States Attorney (David D. Freudenthal, United States Attorney, with him on the brief), Cheyenne, Wyoming, for Plaintiff-Appellee.

Before **PORFILIO**, **MCWILLIAMS** and **HENRY**, Circuit Judges.

**PORFILIO**, Circuit Judge.

A jury convicted Charles Gary Henry of four counts of filing false statements to obtain federal workers compensation benefits in violation of 18 U.S.C. § 1920, and acquitted him of one count of making a false statement in violation of 18 U.S.C. § 1001. The district court sentenced him to serve 12 months in prison, followed by three years' supervised release; make restitution to the Department of Labor in the amount of $35,442.29; and pay a special $300 assessment. Mr. Henry appeals on several grounds: (1) the government failed to prove a statutory element by not showing what effect the unreported income would have had on his benefits if reported; (2) the district court improperly admitted evidence; and (3) the district court erred in sentencing. Finding no error, we AFFIRM the conviction and sentence.

## I.

Mr. Henry was employed as a construction maintenance foreman for the Department of Justice, Bureau of Prisons, when he fell from scaffolding and injured his back in February 1980. He filed a report with the Department of Labor, Office of Workers Compensation Programs (OWCP), and was awarded disability benefits until he became employed again in August 1980. Between 1980 and 1992, he had several different jobs and was on and off disability. From April 1992 until his benefits were

terminated upon his conviction, Mr. Henry received temporary total disability from

OWCP. The charges against him pertain to the years 1994-1997.[1]

Any individual who receives OWCP benefits must self-report his work-related

activities, including volunteer work. The OWCP periodically sends benefit recipients a

Form 1032 which requires the recipient to indicate any work or earnings of the previous

15 months. It states, in relevant part:

> Report ALL employment for which you received a salary,
> wages, income, sales, commissions, piecework, or payment of
> any kind … ALL self-employment or involvement in business
> enterprises … The kinds of services which you must report
> include such activities [as] carpentry, mechanical work,
> painting, contracting, child care, odd jobs .… Even if your
> activities were part-time or intermittent, you must report them
> …. Report as your "rate of pay" what you were paid. Include
> the value of such things as housing, meals, and reimbursed
> expenses, if they were part of your employment … Report
> ANY work or ownership interest in any business enterprise,
> even if the business lost money or if profits or income were
> reinvested or paid to others. If you performed any duties in
> any business enterprise for which your [sic] not paid, you
> must show as rate of pay what it would have cost the
> employer or organization to hire someone to perform the work
> or duties you did, even if your work was for yourself or a
> family member or relative.

The Form 1032 cover sheet provides the following:

WARNING

---

[1] Thus, the additional facts provided by the parties about Mr. Henry's employment
and disability history between 1980 and 1993 are not relevant to the issues before the
court.

A FALSE OR EVASIVE ANSWER TO ANY QUESTION,
OR THE OMISSION OF AN ANSWER, MAY BE
GROUNDS FOR FORFEITING YOUR COMPENSATION
BENEFITS AND SUBJECT YOU TO CIVIL LIABILITY.
A FRAUDULENT ANSWER MAY RESULT IN
CRIMINAL PROSECUTION.  ALL STATEMENTS ARE
SUBJECT TO INVESTIGATION FOR VERIFICATION.

Mr. Henry received and returned by mail numerous Forms 1032.  The last four forms became the basis for Counts 2-5 of the superseding indictment.  On each of the four documents, in the space requesting whether he had been self-employed or involved in any business enterprise during the preceding 15 months, Mr. Henry wrote "No" or "None." On all four forms, Mr. Henry left blank the space requesting information about the amount of compensation he received from self-employment or involvement in a business enterprise.

Ted Riegel, an auto body shop manager in Laramie, Wyoming, testified he employed Mr. Henry to reroute and install a new water heater and gas lines in his basement.  On May 16, 1994, Mr. Henry completed the plumbing work and presented Ted Riegel with a "Job Work Order." The work order indicated his labor costs were $270 minus $70 for the length of time he took completing the job, and showed invoices for supplies purchased by "Gary Henry Construction." Ted Riegel testified he paid Mr. Henry by check.  Mr. Henry's Form 1032, dated April 24, 1995, reflected neither the work nor

compensation. Ted Riegel also testified he employed Mr. Henry to remodel an old farmhouse in 1994 and 1995.

During the winter of 1995, Mr. Henry remodeled a bathroom in Ted Riegel's home by installing new plumbing, fixtures, and flooring. Upon completion, Mr. Henry presented Ted Riegel with an itemized bill setting forth the materials used in the job. Ted Riegel paid Mr. Henry in full for the materials and paid his labor charges by making two installments, documented by canceled checks dated April 27, 1995, and May 24, 1995, each in the amount of $150. Mr. Henry's Form 1032, dated February 23, 1996, showed neither the work nor compensation.

Mr. Henry also worked for his long time friend, Gary Riegel, who was Ted's father and the owner of the auto body shop. In 1994, Mr. Henry helped construct a 3000-square foot expansion to the body shop. Mr. Henry then assisted Gary Riegel in erecting a 50' x 125' Quonset hut. Mr. Henry received no cash for this work. Gary Riegel testified, "he was under disability that he couldn't, you know, receive cash for work, but I – I assumed that if what we're doing, I guess I would say in broad terms say trading."

On February 27, 1995, Gary Riegel gave Mr. Henry a 1993 Dodge Dynasty. The bill of sale reflected a $7000 sale price. On March 22, 1996, Gary Riegel gave Mr. Henry a 1988 Toyota pickup; the bill of sale reflected a price of $500. Gary Riegel testified he transferred the cars to Mr. Henry as payment for the body shop and Quonset hut work.

Gary's wife, Grace Riegel, bookkeeper for the body shop testified both vehicle transfers were treated as construction expenses by the business for tax purposes. Gary Riegel also testified to giving Mr. Henry the pickup out of moral obligation. Mr. Henry's Forms 1032, dated April 24, 1995, February 23, 1996, and August 24, 1996, did not reflect the work or compensation.

Cecyle Perry testified she and her boyfriend hired Mr. Henry to remodel their bathroom in 1996. Two teenagers who had previously assisted Mr. Henry helped him with the bathroom renovations. Mr. Henry himself worked sporadically on the remodeling job and paid the teenagers in cash. Perry testified Mr. Henry's final bill included $20 per hour for his labor. Perry and her boyfriend each paid Mr. Henry $175 with checks dated July 8, 1995. Mr. Henry's Forms 1032, dated August 24, 1996, and March 14, 1997, did not indicate the work or compensation.

## II.

An individual commits the crime of filing false statements to obtain federal workers compensation benefits if he or she:

> [K]nowingly and willfully falsifies, conceals, or covers up a
> material fact, or makes a false, fictitious, or fraudulent
> statement or representation, or makes or uses a false statement
> or entry in connection with the application for or receipt of
> compensation or other benefit or payment under subchapter I
> or III of chapter 81 of Title 5 [Federal Workers Compensation
> Programs] ….

**18 U.S.C. § 1920 (Supp. 1996)**. If the government proves these elements, the statute provides:

> [The defendant] shall be guilty of perjury, and on conviction thereof shall be punished by a fine under this title, or by imprisonment for not more than 5 years, or both; but if the amount of the benefits obtained does not exceed $1,000, such person shall be punished by a fine under this title, or by imprisonment for not more than 1 year, or both.

*Id.*

We must first clarify the parties' confused reading of the statute. In an attempt to persuade us to reverse or affirm the conviction, the parties engage in mathematical calculations and present various theories of loss to show the benefits falsely obtained were under or over $1000. These arguments conflate the prohibitive and punitive portions of the statute. As the Second Circuit recently explained, "the quantity of the benefits falsely obtained is not a substantive element of a violation of § 1920." *United States v. Grillo*, 1998 WL 824323, * 1-2 (2d Cir. Dec. 1, 1998) (holding "Congress' use of the term 'benefits obtained' in § 1920 must be read only as part of the punishment portion of the statute and not to modify or define the conduct that § 1920 prohibits."). To affirm Mr. Henry's conviction, therefore, we need only consider whether the evidence established the substantive elements of the crime. At this stage, it is irrelevant whether the benefits falsely obtained were more or less than $1000.

We review sufficiency of the evidence de novo, **United States v. Wilson**, 107 F.3d 774, 778 (10th Cir. 1997), examining the evidence in the light most favorable to the prevailing party and drawing all inferences in that party's favor. **United States v. Davis**, 965 F.2d 804, 811 (10th Cir. 1992). We do not weigh conflicting evidence or consider witness credibility. **United States v. Trammell**, 133 F.3d 1343, 1351-52 (10th Cir. 1998).

Mr. Henry argues the government failed to prove he made false statements to fraudulently obtain benefits. Mr. Henry's support for this point is that he followed OWCP instructions by disclosing his volunteer activities on several Forms 1032. But listing 20 hours of volunteer work does not relieve Mr. Henry of the requirement he list "ALL" work and income, nor does splitting hairs on whether he just supervised construction or actually hammered the nails and whether he kept every dollar earned or passed a portion on to other laborers. In light of all the evidence, Mr. Henry has not shown the jury erred in finding he made false statements about his work and income on four Forms 1032.

Mr. Henry next argues the government failed to establish materiality because the evidence did not show his earnings, if reported, would have diminished his benefits. **See United States v. Parsons**, 967 F.2d 452, 455 (10th Cir. 1992) ("The test for materiality [under 18 U.S.C. § 1001][2] is whether the falsification has a natural tendency to influence,

_____

[2] Although **United States v. Parsons** was decided under 18 U.S.C. § 1001, and Mr.
(continued...)

or was capable of influencing, the decision of the tribunal in making the determination required to be made.") (internal quotations and citations omitted); **see also United States v. Harrod**, 891 F.2d 1171, 1176 (10th Cir. 1993) (answer of "no" to question on Form 1032 concerning self-employment was material). OWCP Senior Claims Examiner Linda Thomas ("Ms. Thomas") testified information that a person is capable of performing some work for compensation is important to OWCP because it "says that this person is only partially disabled and although he cannot do what he was doing when he got hurt,

---

[2](...continued)
Henry appeals a conviction under 18 U.S.C. § 1920, we find the **Parsons** test for materiality applies here. **See United States v. Fitzgerald**, 147 F.3d 1101, 1103 n.1 (9th Cir. 1998) (holding 18 U.S.C. § 1920 creates a duty to disclose employment information to government) ("In 1994, Congress amended § 1920.… Section 1920 now closely resembles § 1001.… Sections 1920 and 1001 both prohibit falsifying, concealing, or covering up a material fact and making a false written statement. *That being so, the reasoning in ... cases under § 1001 logically applies to ... cases under the present version of ...1920.*") (emphasis added). 18 U.S.C. § 1001 provides, in pertinent part:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully- (1) falsely conceals or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.

clearly he can do something, so I would pursue it to see if we could get him back to work part time."

Mr. Henry responds that he did disclose volunteer work and *some* paid employment. He states these disclosures informed OWCP of his capacity to work and OWCP did not reduce his benefits as a result of this information. Therefore, Mr. Henry contends, any additional information would also not cause OWCP to alter his benefits; therefore, his false statements were not material. In light of the testimonial evidence, this argument is speculative at best, illogical at worst; and we are not surprised the jury rejected it.

The evidence supports a finding Mr. Henry made statements that were false and material. Mr. Henry does not contest he knew the statements were false when he made them or that these statements were made in an application for federal workers compensation. We find no reason to disturb the jury's conclusion Mr. Henry violated the substantive elements of 18 U.S.C. § 1920.

**III.**

Mr. Henry also challenges the district court's admission of documentary evidence. In particular, Mr. Henry argues the evidence did not show he "made" the false statements because his signatures were not authenticated. Fed. R. Evid. 901(b); *see also United*

*States v. Wagner*, 475 F.2d 121, 123 (10th Cir. 1973) (district court erred in admitting a check after authentication expert compared signature with unauthenticated public record signature). Evidentiary decisions, such as findings concerning the authenticity of a document, rest within the sound discretion of the district court and are reviewed for abuse of discretion. *United States v. Knox*, 124 F.3d 1360, 1363 (10th Cir. 1997).

Fed. R. Evid. 901(b) requires a document to be authenticated as a condition precedent to its admission. "The rationale for the authentication requirement is that the evidence is viewed as irrelevant unless the proponent … can show that the evidence is what the proponent claims." *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991). When Mr. Henry objected to the admission of the documents, the government responded proper foundation had been established pursuant to Fed. R. Evid. 803(6) and 803(8). The district court ruled the witness "identified [the Forms 1032] and authenticated them as official documents in her custody, and I think they may be received." Here, Mr. Henry argues the business records exception should not apply because the records were prepared by him rather than by OWCP, Fed. R. Evid. 803(6), and the public records exception to the authentication requirement does not provide a basis for admission of *all* records held by governmental agencies. Fed. R. Evid. 803(8).

"Rule 901(b)(1) provides that a witness with knowledge may authenticate evidence by testifying that a matter is what it is claimed it be." *Hernandez-Herrera*, 952 F.2d at

343.[3]  Ms. Thomas testified it was the duty of OWCP to mail, receive, and preserve

documentation such as the Forms 1032, and she was assigned to maintain Mr. Henry's

OWCP file as part of her official duties.  Before the forms were admitted, Mr. Henry's

attorney asked Ms. Thomas if they appeared to feature Mr. Henry's signature, if she had

received them in the regular course of business, if they had been filed by her office, and if

she compared the forms to the originals in her office.  She answered affirmatively to these

questions.

Several pieces of circumstantial evidence also support that the district court

properly admitted the Forms 1032.  OWCP regularly mailed Mr. Henry instructions and

blank Forms 1032.  The completed forms carried a strong indicia of reliability because

they replied to OWCP's original mailing to Mr. Henry.  *See Winel v. United States*, 365

F.2d 646, 648 (8th Cir. 1966) ("It has long been recognized that one of the principal

situations where the authenticity of a letter is provable by circumstantial evidence arising

out of the letter's context, other than proof of handwriting or the business records

---

[3] The parties contest whether a record "kept" by a company or government but completed, filled out, or signed by an individual who is outside the organization qualifies as a "business record."  In *United States v. Hernandez-Herrera* the records found to be sufficiently authenticated by testimony of an INS employee were "made" and "kept" by the INS, 952 F.2d 342, 343-44 (10th Cir. 1991), but the case does not reveal whether the records contained any statements of individuals outside the INS.  *Cf. United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 1347 (1997) (disqualifying as a record of regularly conducted activity a document filled out by someone other than a governmental employee).

- 12 -

exception, is where it can be shown that the letter was sent in reply to a previous communication."). Mr. Henry's own counsel testified to helping him complete the forms; the forms contained information personal to him, such as his Veteran Administration number; the forms were internally consistent as to biographical information; and several witnesses corroborated the information contained in them. *See* Fed. R. Evid. 901(b)(4) (A document may be authenticated by "appearance, contents, internal patterns, and other distinctive characteristics, taken in conjunction with circumstances."). Considering the record as a whole, we cannot say the district court abused its discretion in finding the forms were admissible.

## IV.

Mr. Henry next challenges his sentence. The district court determined the base offense level to be 6, with a 5 level increase for loss of more than $40,000 but less than $70,000, and a 2 level enhancement for more than minimal planning, resulting in a Total Offense Level of 13. Mr. Henry's criminal history resulted in a Criminal History Level of I and a guideline range of 12 to 18 months. Mr. Henry contends the district court erred in calculating the loss suffered by the government was the total amount of disability paid to him from the first fraudulently filed Form 1032 until his conviction. He also argues the district court erred in enhancing his sentence for more than minimal planning. We review

the district court's legal interpretation and application of the sentencing guidelines de novo and review the court's factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts. ***United States v. Cantley***, 130 F.3d 1371, 1378 (10th Cir. 1997).

Mr. Henry argues the proper calculation of "loss" is not the total amount of benefits he received, but rather the difference between what he actually received and what he would have received if reporting had been truthful. Under this formula, "if Mr. Henry reported that he had received and kept the $10 paid by Ted Riegel during the period covered by Count IV, it would not have resulted in a complete loss of total disability benefits," only a loss in the amount of the "overpayment." And if overpayment equaled the loss, Mr. Henry's Offense Level would have been reduced by 6 levels. But the plain terms of the statute pertain to "the amount of the benefits obtained," not the amount of benefits obtained minus the amount that would have been obtained if no false statement had been made. **18 U.S.C. § 1920;** ***see also United States v. Brothers***, 955 F.2d 493, 495 (7th Cir. 1992) (If a claimant submits a false Form 1032, he forfeits the entire disability benefit even if he would have been entitled to a reduced benefit if he had submitted an accurate Form 1032.). The district court has discretion to enhance the base offense level because of actual or intended loss, whichever is greater. ***United States v. Smith***, 951 F.2d 1164, 1166 (10th Cir. 1991). The parties do not contest the total disability compensation

Mr. Henry received between the date of his first fraudulent statement and the date of his conviction was $62,097.65.[4]  Therefore, the 5 level enhancement for a loss of more than $40,000 but less than $70,000 was correct.  U.S.S.G. § 2F1.1(b)(1).

The Sentencing Guidelines provide a 2 level enhancement if the offense involved more than "minimal planning."  U.S.S.G. § 2F1.1(b)(2)(A).

> More than minimal planning means more … than is typical for commission of the offense in simple form …. [It] also exists if significant affirmative steps were taken to conceal the offense … [and] is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune.

Commentary to U.S.S.G. § 1B1.1 (Application Note 1 (f)).  The district court denied Mr. Henry's objection to the minimal planning increase, stating, "I think I'm going to deny this objection.  I really feel that to do this over the period of time that he did certainly would take a lot of planning, and I think it is more than minimal."  The government states the district court's decision was correct because Mr. Henry returned four forms that concealed his crime.  Mr. Henry argues OWCP sent him forms and he merely completed and returned them in "purely opportune" fashion.  Further, the government "stacked" charges against him by requiring him to repeatedly fill out the forms over several years.  However, as the government points out, there was no evidence the OWCP "was engaged

---

[4] Although he challenges the calculation of loss, Mr. Henry offers no specific challenge to the portion of the sentence requiring him to make restitution to the United States Department of Labor in the amount of $35,442.29, which was the total amount of benefits received minus medical benefits.

in some nefarious scheme to ensnare the Defendant." Further, case law negates that simply responding to questions renders statements "purely opportune." *See United States v. Clements*, 73 F.3d 1330, 1341 (5th Cir. 1996) (claim of merely responding to questions submitted by IRS agent did not immunize defendant from upward adjustment for more than minimal planning). The district court did not clearly err in adjusting the sentence upward for minimal planning.

## V.

The government proved the statutory elements of the crime. The district court properly admitted the Forms 1032, and correctly sentenced Mr. Henry. Therefore, we **AFFIRM** the conviction and sentence.

**HENRY**, J., concurring in part and dissenting in part,

I write separately because although I agree fully with, and join the majority in, the first three sections of the opinion, I disagree with the majority about the meaning of "loss" under U.S.S.G. § 2.F1.1(b)(1). I would vacate the sentence and remand for re-sentencing, holding that the district court erred in finding the "loss" to be the total benefits received during the fraudulent activities.

We review the district court's legal interpretation of the sentencing guidelines de novo. U.S. v. Cantley, 130 F.3d 1371, 1378 (10th Cir. 1997). The Sentencing Guideline for "Offenses involving Fraud or Deceit" is section 2F1.1. Section 2F1.1(b)(1) instructs the court that "[i]f the loss exceeded $2,000, increase the offense level as follows . . . ." The district court found the loss to be $62,097.65 and increased the offense level accordingly. The amount of loss used by the district court is the total amount of benefits received by Mr. Henry in the periods for which an erroneous form was submitted. I believe that using this amount reflects both a legal error and a poor policy choice as to the meaning of "loss" in the sentencing guideline.

"Loss" is defined in the Guidelines as the "value of the benefits diverted from intended recipients or uses." U.S.S.G. § 2F1.1, cmt. (n. 8(d)). The loss calculation under § 2F1.1 measures "the magnitude of the crime at the time it was committed." United States v. Janusz, 135 F.3d 1319, 1324 (10th Cir.1998).

The magnitude of Mr. Henry's crime is best measured by the amount of benefit he received unjustly as a result of incompletely filling out the 1032 forms. The government has a cause of action to forfeit the entire amount of benefits received in periods for which Mr. Henry supplied incorrect information, see 20 C.F.R. § 10.125, but this is different from saying that Mr. Henry's wrongful action caused a loss of the entire amount of benefits received. For example, the government has a civil cause of action in rem against a property from which drugs were sold, see 21 U.S.C. § 881(a)(6), but the value of that property is certainly not used in determining the culpability of the dealers. In Mr. Henry's case, the government has a civil cause of action in rem against the entire amount of benefits received during periods covered by fraudulently completed 1032 forms. Mr. Henry's criminal culpability is another matter altogether.

The Net Loss Rule might inform our decision in this case. "The net loss rule . . . requires the court to deduct from the loss calculation any value the defendant gave the victim at the time of the fraud." Janusz, 135 F.3d at 1324. The "value" Mr. Henry "gave" the government at the time of fraud is the amount of benefits he received to which he had a statutory right. That is, the government was obligated to supply that amount based on Mr. Henry's disability. Accordingly, the remaining net loss is the amount of benefits Mr. Henry received above what the government would have paid him had he

correctly reported his income.[1] This loss need not be calculated with precision, U.S.S.G. §2F1.1 comment (n. 9), but it is a very different figure than the total benefits received.

In an analogous case, the Sentencing Guidelines indicate that for violations of the Davis-Bacon Act, 40 U.S.C. § 276a, criminally prosecuted under 18 U.S.C. 1001, "the loss is the difference between the legally required and the actual wages paid." U.S.S.G. 2F1.1 comment (n. 8(e)). The Davis-Bacon Act regulates the payment of wages to subcontracted laborers in public projects, and 18 U.S.C. § 1001 is a general anti-fraud provision of which 18 U.S.C. § 1920 is a specific application. The analogous nature of these violations counsels in favor of calculating "loss" in Mr. Henry's case as the amount he received above what he would have received but for the violation.

Further, because the purpose of using "loss" as a factor in sentencing is as a gauge of the severity of the crime, see Janusz, 135 F.3d at 1324, using the entire amount of benefits received as a measure of the loss and thus as a measure of the severity of the crime makes little sense. Mr. Henry omitted compensation of about $9000 over a three year and two month period. Over $7000 of that total was in the form of a car. Much of the $9000 was not for labor but was for materials. Thus, Mr. Henry's unreported labor over the more than three year period amounted to significantly less than $9000. For this

---

[1] Admittedly, Mr. Henry's moonlighting may have resulted in enough income (or evidence of ability to generate income) to greatly reduce his benefits, or maybe even depriving him entirely of benefits. However, the government has not even attempted to demonstrate that this was the case.

fraud, Mr. Henry is receiving the same sentencing factor as someone whose fraud directly cost the victims thereof $62,097.65.

The absurdity of this calculus is best suggested by hypothetical. Consider two defendants. The first lied on her 1032 form in a manner that caused her to receive ten dollars more than she would have received but for the lie. Yet her total benefits during the period covered by that 1032 are $80,000. The second defendant lied on his 1032 form in a manner that caused him to receive $10,000 more than he would have received but for the lie, and yet his total benefits in that period amount to $11,000. I cannot imagine a rational basis for punishing the first defendant, perpetrator of a ten dollar lie, more severely than the second, whose lie is one thousand times more costly to the government. And yet, on the definition of loss urged by the government, the first defendant would have the base level of her offense increased by three more points than the second defendant. All else being equal, this could mean a judge would be mandated to give the first defendant a longer sentence than the second, notwithstanding his belief that she is clearly the less culpable of the two.

The statute is less clear to me than it is to the majority which cites the "plain terms of the statute," Maj. Op. at 14 – namely "the amount of the benefits improperly obtained" – as support for the district court's interpretation of loss. See 18 U.S.C. § 1920. This language is of little help. The very question before us in interpreting "loss" is – what is

-4-

the amount of benefits *improperly* obtained? This language does not help distinguish between the interpretation of "loss" as the total benefits received during periods covered by inaccurate Form 1032s and that of "loss" as the benefits received that would not have been received but for the inaccuracies on Form 1032s. The majority cites United States v. Brothers, 955 F.2d 493, 495 (7th Cir. 1992), for the proposition that submission of a false Form 1032 forfeits the entire disability benefit even if submission of an accurate Form 1032 would have resulted in merely a reduced benefit. But this proposition speaks only to the civil forfeiture of the property. As I suggest above, this is not relevant to the defendant's criminal culpability.

For the reasons stated herein, I would find the district court's legal interpretation of the meaning of "loss" to be error, vacate the sentence and remand for re-sentencing. I would require the government to prove, "not . . . with precision," U.S.S.G. §2F1.1 comment (n. 9), but with more than we have before us, what the actual loss to the government for the relevant reporting periods was. Then I would determine the increase level accordingly. To do otherwise, as my hypothetical suggests, has costly ramifications for future cases, leading to punishments disproportionate to the crime.