UNITED STATES of America,
Plaintiff–Appellee,

v.

Luis Daniel RAMOS–PALOMINO, also known as Flaco, Defendant–Appellant.

No. 01–3320.

United States Court of Appeals,
Tenth Circuit.

Oct. 18, 2002.

Before SEYMOUR, HENRY, and BRISCOE, Circuit Judges.

## ORDER AND JUDGMENT*

SEYMOUR, Circuit Judge.

Luis Daniel Ramos–Palomino was indicted on four counts charging various drug violations. He was acquitted on one count, convicted on three counts, and given three concurrent sentences of 188 months. On appeal, Mr. Palomino contends the evidence is insufficient to sustain his conviction on Count 3. We affirm.

## I

"We review the record for sufficiency of the evidence de novo." *United States v. Wilson,* 107 F.3d 774, 778 (10th Cir.1997). " 'Evidence is sufficient to support a con-

viction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with the reasonable inferences therefrom, taken in a light most favorable to the government.' " *Id.* (quoting *United States v. Mains,* 33 F.3d 1222,-1227 (10th Cir.1994)). Viewed in this light, the record reveals the following sequence of events.

On January 11, 2001, a special undercover agent with the Kansas Bureau of Investigation agreed to purchase a half-pound of methamphetamine (meth) from co-defendant Armando Martinez, who arrived at the agreed location accompanied by Raul Martinez and co-defendant Cesar Rios–Martinez. He sold the agent a half-pound of meth for approximately $3000 and told him he could obtain kilos of cocaine and pounds of meth, and could get the meth that night.

Later that day, the agent called Armando to set up a deal for a pound of meth. When Armando met the agent at the agreed location, Armando was arrested. While being interviewed by the agent, Armando received several calls on his cell phone from a caller identified as "Flaco." Flaco was subsequently shown to be defendant, Mr. Palomino. Armando told the agent Flaco was his meth supplier and had supplied the half-pound of meth the agent had purchased earlier that day. Armando agreed to cooperate and called Mr. Palomino to ask about dealing a pound of meth. Mr. Palomino agreed to meet Armando at a tavern in Kansas City.

At the tavern that evening, the agent and Armando met with Mr. Palomino and negotiated the purchase of one pound of meth. Because Mr. Palomino did not speak English and the agent did not speak Spanish, Armando acted as interpreter. Mr. Palomino said he had tried unsuccessfully to obtain the pound of meth but he would have it the next day. He explained he had an approximately one-ounce sample he would sell, which the agent agreed to purchase. Mr. Palomino told the agent the meth would be available the next day.

When Armando called the next day, Mr. Palomino told him the meth would be available for purchase after 3:00 p.m. When Armando and the agent arrived at the tavern at 3:30 p.m., Mr. Palomino was there with another man who identified himself as Mr. Palomino's partner and said the meth was coming. After a long wait, Mr. Palomino offered to sell the agent some cocaine and went home to get it. When Mr. Palomino returned, he told Armando and the agent that the meth deal would take place at another tavern. The men left to go to the second tavern and on the way Mr. Palomino handed the agent a plastic sack containing five one-ounce baggies of cocaine. Mr. Palomino wanted $3000 for the drug but told the agent he could pay for the cocaine along with the meth when it arrived.

Armando and the agent arrived at the second tavern and waited outside for Mr. Palomino. After a while, Armando called Mr. Palomino on his cell phone and asked whether the deal was going to take place. At that point Mr. Palomino came out of the tavern, told the agent he wanted to be paid for the cocaine, and was arrested. Armando testified that after selling the agent the cocaine, Mr. Palomino had called around trying to get the pound of meth, and that they went to the second tavern because it looked like Mr. Palomino had been successful.

The government charged Mr. Palomino with four counts alleging drug offenses. Count One, on which Mr. Palomino was acquitted, was based on the half-pound meth transaction between the agent and Armando on January 11. Count Two was based on the one-ounce sample of meth Mr. Palomino sold the agent the evening of January 11. Count Three, which Mr. Palomino challenges as unsupported by sufficient evidence, was based on his unsuccessful effort to sell the agent a pound of meth. That count alleged that Mr. Palomino attempted to possess with the intent to distribute 450 grams or more of a mixture containing meth, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Four was based on Mr. Palomino's sale to the agent of the five one-ounce baggies of cocaine.

## II

We first assess the sufficiency of the evidence to support Count Three, which charged Mr. Palomino with attempting to possess with the intent to distribute meth. The crime of attempt requires proof of the requisite criminal intent, and commission of an act constituting a substantial step toward commission of the substantive offense. *United States v. Becker*, 230 F.3d 1224, 1234 (10th Cir.2000). A substantial step is one that strongly corroborates the firmness of the defendant's criminal intent, *see United States v. Savaiano*, 843 F.2d 1280, 1296 (10th Cir.1988), and is defined as an "overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime," *United States v. Monholland*, 607 F.2d 1311, 1318 (10th Cir.1979). "[T]he act must have passed the preparation stage so that if it is not interrupted extraneously, it will result in a

crime." *Id.* at 1319. "That further major steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken are substantial." *Savaiano*, 843 F.2d at 1297 (citing *Model Penal Code* § 5.01 (comment 6(a)) (1962 Proposed Official Draft)).

■ Mr. Palomino contends the government failed to show he committed a substantial step toward completion of the substantive offense. He maintains the government presented no evidence he contacted anyone in an attempt to obtain a pound of meth prior to his meeting with the agent at the tavern the afternoon of January 12. However, the record reveals testimony by Armando that Mr. Palomino told him on January 11 he had tried without success to obtain the pound of meth but would have it the next day, *see* rec. vol. IV, doc. 87 at 191, and testimony by Armando that after Mr. Palomino sold the agent the cocaine on January 12 outside the tavern, Mr. Palomino "was trying to obtain the pound of methamphetamine for the agent[,] ... trying to call other people, trying to communicate with other persons." *Id.* at 195. Although his efforts were unsuccessful, his failure was a matter beyond his control rather than a decision on his part to abandon the venture. Accordingly, this evidence of Mr. Palomino's efforts to obtain the meth to sell to the agent allowed a reasonable jury to find beyond a reasonable doubt that he took a substantial step toward possessing with the intent to distribute the meth.[1]

■ Mr. Palomino also contends the evidence was insufficient to establish the quantity of meth charged in the indictment, 450 grams or more of a mixture containing meth. In responding to Mr.

Palomino's post-trial motion for a judgment of acquittal, the district court agreed the evidence was insufficient to allow the jury to find Count Three involved 450 grams or more, but concluded under the relevant case law that a judgment of acquittal was nonetheless not required. Under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), a jury must find beyond a reasonable doubt any fact that increases the penalty for a crime beyond the statutory maximum. No reversible error occurs under *Apprendi* when drug quantity is not proven at trial unless a sentence is imposed in excess of the twenty-year maximum set out in 21 U.S.C. § 841(b)(1)(C) for crimes involving less than fifty grams of a mixture containing meth. *See United States v. Jones*, 235 F.3d 1231, 1236–37 (10th Cir. 2000). None of Mr. Palomino's sentences exceeded the twenty-year maximum set out in that section and his argument is therefore without merit.

### III

We next address Mr. Palomino's sentencing arguments. In so doing, "[w]e review the district court's legal interpretation and application of the sentencing guidelines de novo and review the court's factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Henry*, 164 F.3d 1304, 1310 (10th Cir.1999).

■ Mr. Palomino first asserts the court erred by including in its drug quantity determination the half-pound of meth underlying Count One. Mr. Palomino concedes, as he must, that a sentencing court

---

1. We note in addition that the evidence of Mr. Palomino's sale to the agent of a sample of the drug he intended to provide is also the type of conduct courts have held to constitute a substantial step. *See United States v. Fisher*, 3 F.3d 456, 462 n. 18 (1st Cir.1993) (finding acceptance of a sample in advance of delivery to be substantial step).

may use drug quantities charged in counts of acquittal, *see United States v. Watts,* 519 U.S. 148, 153, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam), and that under U.S.S.G. § 1B1.3 (a)(2) drug quantities other that those resulting in a conviction may be used to calculate a defendant's sentence if they fall within the ambit of that guideline. Mr. Palomino contends the government did not prove by a preponderance of the evidence that he was at all involved in the criminal activity involving the half-pound amount. We disagree.

The government bears the burden of proving drug quantity for sentencing purposes by a preponderance of evidence. *See United States v. Garcia,* 994 F.2d 1499, 1508 (10th Cir.1993). We will not disturb the district court's drug quantity determination "unless it has no support in the record or unless, after reviewing all the evidence, we are firmly convinced that an error has been made." *United States v. Nieto,* 60 F.3d 1464, 1469 (10th Cir. 1995). Moreover, "we defer to the district court when reviewing the credibility of the witness on whose testimony it relies in making its factual findings." *Id.* at 1469–70.

In deciding to include the drug amount set out in Count One, the district court found Armando to be a very credible witness and accepted his testimony that Mr. Palomino was the source of the half-pound of meth at issue in that count. The court pointed out that Armando's testimony was corroborated by the calls he received from "Flaco" on his cell phone. Although we recognize, as did the district court, that Armando's testimony in this regard was contradicted by that of Cesar Rios–Martinez, it is the province of the sentencing judge to weigh credibility. The court further found that the meth transaction set out in Count One and the offenses of conviction were part of the same course of conduct based on Armando's testimony that Mr. Palomino was the source of all the meth, as well as the short time interval between the offenses and the fact that all the meth was packaged with the same material. *See* U.S.S.G. § 1B1.3, comment. (n.9) (factors used to determine same course of conduct include degree of similarity of offenses, repetition of offenses, and time interval between offenses). In sum, given the deference we accord credibility assessments made by the sentencing court and the other factors upon which it relied, we conclude that the district court's drug quantity determination was supported by sufficient reliable evidence.

Mr. Palomino also contends the district court erred in denying a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The defendant bears the burden of showing by a preponderance of the evidence that he is entitled to the reduction. *See United States v. March,* 999 F.2d 456, 463 (10th Cir.1993). Because the sentencing court is in a unique position to evaluate a defendant's acceptance of responsibility, its determination is entitled to great deference on review. *See* U.S.S.G. § 3E1.1, comment. (n.5). Conduct that results in a sentence enhancement for obstructing or impeding justice under U.S.S.G. § 3C1.1 "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, comment. (n.4).

■ Although Mr. Palomino went to trial rather than plead guilty, he contends he is entitled to the reduction because the government would not agree to a plea bargain unless he agreed to plead guilty to Count One. Mr. Palomino asserts that he refused to do so because he was not guilty of the charge, as evidenced by his acquittal on that count. The district court rejected this argument, noting Mr. Palomino could have pled guilty to the conduct for which

the jury convicted him. In addition, Mr. Palomino received a sentencing enhancement for obstructing justice based on a throat-slashing gesture he made to Armando after their arrest. Thus, Mr. Palomino received an enhancement for threatening a witness and he required the government to go to trial on those counts for which he subsequently desired to accept responsibility, both factors which ordinarily preclude a reduction for acceptance of responsibility. Because Mr. Palomino has not demonstrated his case is the rare or extraordinary one in which the reduction should nonetheless be granted, we defer to the sentencing court's determination.

The conviction and sentences are **AFFIRMED**.

---

\* After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.