UNITED STATES of America, Plaintiff–Appellee,

v.

Victor PARSONS, Defendant–Appellant.

No. 91–2091.

United States Court of Appeals, Tenth Circuit.

June 23, 1992.

Reber Boult, Albuquerque, N.M., for defendant-appellant.

James P. Springer, Atty., Tax Div., Dept. of Justice, Washington, D.C. (James A. Bruton, Acting Asst. Atty. Gen., Robert E. Lindsay, Alan Hechtkopf, and Barbara A. Curran, Attys., Tax Div., Dept. of Justice, with him on the brief), for plaintiff-appellee.

Before ANDERSON, McWILLIAMS, and SNEED,* Circuit Judges.

SNEED, Circuit Judge.

Parsons appeals his conviction on thirteen counts of willfully making a false statement to a United States agency, in violation of 18 U.S.C. § 1001, and of one count of knowingly making and presenting a false claim, in violation of 18 U.S.C. § 287. We affirm.

I.

FACTS

A. *The Indictment*

Parsons's actions followed a pattern of using Forms 1099 Misc., which are Internal Revenue Service Forms used by a payor to report non-wage payments to taxpayers, to show that certain individuals had received large payments from Parsons, when, in fact, no such payments had been made. In some instances the dispatches of the Forms 1099 were preceded by demands by Parsons that the recipients designated in the Forms 1099 pay the amounts so reported to Parsons.

Thus, Frank Brown, an IRS collection officer, was sent in 1989 a "Notice of Bill due and payable to Victor K. Parsons" in the amount of $3,026,347.35 because of Brown's unlawful conduct and violation of Parsons's civil rights. The same type of notice was sent to Paul L. Bougeant, an IRS agent, which demanded payment of $3,071,743.26. Both notices were subscribed and sworn to before a notary public. Harold Peterson, another IRS agent, received a similar claim. Each recipient of

* Honorable Joseph T. Sneed, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Parsons's claims ignored them. Parsons then sent Forms 1099 to the IRS, accompanied by two Forms 1096, showing that Brown and Bougeant each had received from Parsons $3,071,743.26 and Peterson $3,076,928.69.

The remainder of Parsons's Forms 1099 had their origin in his work as a boilermaker for Electrical Energy Services, Inc. (EESI), and the Western States Construction Boilermakers' Vacation Trust (Trust) in which Parsons had an account. The IRS placed levies on Parsons's wages and his account in the Trust. In response, Parsons sent to the IRS Forms 1099 representing that he had paid to EESI, the Trust, and various individuals associated with these entities the amount of $3,076,928.69 to the Trust and the individuals associated with it, and $3,071,743.26 to EESI and each individual associated with it. Finally, Parsons sent a form 1099 to the International Vice President of the Boilermakers' Union indicating that he had paid the Vice President $3,076,928.69.

In the fall of 1989 Parsons filed a tax return (Form 1040) on which he reported $55,322,491.26, designated as default income, withheld taxes in the same amount, and claimed a refund of $39,830,259.96.

Parsons was indicted initially in February, 1990, but this indictment was replaced by a second one on April 12, 1990 alleging thirteen counts of violating 18 U.S.C. § 1001 and one count of violating 18 U.S.C. § 287.

B. *Evaluation of Competency to Stand Trial*

Not surprisingly, the court-appointed attorney for Parsons raised the issue of his competency to stand trial. On September 20, 1990, that attorney moved to have Parsons ordered to undergo a psychiatric or psychological evaluation pursuant to 18 U.S.C. §§ 4241 and 4247. Parsons disagreed with his attorney's motion and the attorney moved to rescind his motion, which the district court granted on the condition that Parsons be examined by one of three named physicians to determine his competency to stand trial.

He was examined by a Dr. Cecilia Garcia de Ortega who found him competent to stand trial. When asked by the court if he agreed, Parsons said, "Yes, most definitely." Trial was set and a new stand-by attorney was appointed. On the day of trial, Parsons insisted he was ready, but stand-by counsel expressed doubts about his competence. The district court entered an order pursuant to 18 U.S.C. § 4241(b) requiring Parsons to submit to an examination by a psychologist, Dr. William Foote, to determine his competency both to stand trial and to form the requisite criminal intent. In December, 1990, Dr. Foote found Parsons not competent to stand trial.

The government by this date had reason to believe that Parsons was following a procedure set forth by the Farmington, New Mexico office of the National Commodity and Barter Association (NCBA) designed to hinder and delay the orderly collection of taxes. Parsons was persuasively linked to persons who operated the Farmington office of NCBA and who had been prosecuted for offenses similar to those charged against Parsons. Accordingly, the government moved on December 20, 1990 "for Determination and Disposition of Defendant Pursuant to 18 U.S.C. § 4241(d)." The district court held another competency hearing, at which Parsons asserted he was competent, and at the conclusion of which Parsons was committed to the custody of the Attorney General for not more than sixty days and ordered to submit to a psychiatric examination pursuant to 18 U.S.C. § 4241(d). Parsons entered the Mental Health Division of the Federal Correctional Institution in Butner, North Carolina, on January 23, 1991.

He emerged with the opinion of the authorities of that institution that he was not suffering from a mental disease or defect and that he was competent to stand trial. Armed with that report, Parsons, ignoring the position of his stand-by counsel who insisted the "Butner report" was invalid, stated that he was ready to stand trial. The district court found Parsons competent to stand trial under 18 U.S.C. § 4241(d).

## C. The Trial

On April 8, 1991, Parsons received a bench trial. He was found guilty on all counts and sentenced to a six-month term with full credit for time served. Because he had served more than six months, he was released from custody. Stand-by counsel during the trial sought to establish that the proof that Parsons signed the forms was insufficient to justify conviction. The district court held to the contrary.

## II.

## OPINION

### A. Materiality

■ The first issue Parsons raises on appeal is that his statements on the Forms 1099 could not meet the materiality element of 18 U.S.C. § 1001. See United States v. Fitzgibbon, 619 F.2d 874, 879 (10th Cir.1980). His position is that the forms were so ludicrous that no IRS agent would believe them. This is not the proper test. The test for materiality is whether the falsification "has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." Gonzales v. United States, 286 F.2d 118, 122 (10th Cir.1960), cert. denied, 365 U.S. 878, 81 S.Ct. 1028, 6 L.Ed.2d 190 (1961). The determination required to be made in this case was whether the forms depicted truth. They influenced that judgment. Even Parsons' counsel argued that perhaps he did not sign them. That and other features of the forms required evaluation to determine the proper course for the IRS to follow. The forms clearly were material.

The large amounts involved do not reduce the forms to scraps of blank paper. If anything, the reverse is the case. They cry out for attention and it would be blameworthy administration to ignore them.

■ Finally, materiality is not an element required by 18 U.S.C. § 287. See United States v. Irwin, 654 F.2d 671, 682 (10th Cir.1981), cert. denied, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). Perhaps Irwin does depart from the law of other circuits, but that does not enable us to overrule it.

### B. Sufficiency of the evidence to establish that appellant made the false statements and filed the false claim

■ Parsons argues that the evidence did not establish that he made false statements or filed false claims. The handwriting expert compared his known signature with that on the forms and return and concluded that it was "highly probable" that the signatures on the latter were that of Parsons. In addition, a statute, 26 U.S.C. § 6064, provides that the signature of a person on a "return, statement, or other document" is prima facie evidence that the person signed the document. Parsons offers nothing to refute either the experts' finding or the statutory inference.

### C. Competency of persons to stand trial

■ To be competent to stand trial, the defendant must not be suffering from a mental disease or defect rendering him unable to understand the nature and the consequences of the proceedings against him or to assist properly in his defense. See 18 U.S.C. § 4241(d). Obviously we must rely heavily on the discretion of the district court in applying this standard to the defendant. We so rely in this case, confident that, in the light of the district court's initial dubiety about Parsons' competency, its conclusion of competency was reached only after careful consideration of all the evidence. The Butner report obviously was influential, as it should have been. The earlier examination by Dr. Foote did not preclude the court from relying on the Butner report.

It is true, of course, that Parsons sometimes did not cooperate with his lawyers and that the forms and returns were quite bizarre. On the other hand, it is quite possible that Parsons sought unlawfully to divert the IRS from its more normal enforcement efforts.

■ Finally, Parsons is wrong when he claims that the Butner evaluation failed to comply with 18 U.S.C. § 4241. There was no need to hospitalize Parsons for a reason-

able time because of the district court's one-time finding of incompetence. It was enough for the Butner examination to find Parsons competent to stand trial. It was not necessary for the Attorney General, acting through the Butner officials, to find that Parsons would *regain* his capacity to stand trial. Under these circumstances, there was no requirement for a finding that Parsons had improved or recovered sufficiently to permit the trial to proceed. *See id.* §§ 4241(d) and 4247(c).

D. *Propriety of prosecuting under 18 U.S.C. §§ 1001 and 287*

Finally, Parsons argues that he should have been charged and prosecuted under 26 U.S.C. § 7207 rather than the provisions under which he was charged. Section 7207 provides in pertinent part:

> Any person who willfully delivers or discloses to the Secretary any list, return, account, statement, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined....

While it is true that Parsons probably could have been prosecuted under this section, it is not true that he must have been so prosecuted. Making a false claim for a tax refund is specifically covered by 18 U.S.C. § 287. *See United States v. Haynie*, 568 F.2d 1091 (5th Cir.1978); *Kercher v. United States*, 409 F.2d 814 (8th Cir. 1969). Moreover, we agree with the Eleventh Circuit that the existence of section 7207 does not preclude prosecution under 18 U.S.C. § 1001. *See United States v. Fern*, 696 F.2d 1269, 1274 (11th Cir.1983).

The rule of lenity, which states that an ambiguity in a criminal statute must be resolved in favor of the accused, is not applicable to this case. Sections 1001 and 287 unambiguously cover the conduct charged thereunder. Prosecutors are not required to prosecute under another statute perhaps covering the same wrongful acts merely because the other statute imposes a lesser penalty. *See United States v. Barrett*, 837 F.2d 933, 934–35 (10th Cir. 1988); *United States v. Fitzgibbon*, 576 F.2d 279, 283 (10th Cir.), *cert. denied*, 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978).

AFFIRMED.