**UNITED STATES COURT OF APPEALS**
**Filed 5/7/96**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DARRELL LEE MONTOYA,

      Defendant - Appellant.

No. 95-8052
(D.C. No. 94CR80)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **KELLY** and **LUCERO**, Circuit Judges.

Claiming to be enraged by official indifference to police misconduct in his Wind River Reservation community, Darrell Lee Montoya decided to retaliate. Joined by two juveniles, he went on a motorized shooting spree that included an attack on the Bureau of Indian Affairs (BIA) police station in Fort Washakie, Wyoming. No one was killed in the June 6, 1994 spree, but one officer was wounded and flying bullets caused significant

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

damage to government and private property. Although the jury did not find that he intended to kill anyone, Montoya was sentenced to 171 years in prison.

I

Appellant was charged with five counts of attempted murder of a federal officer, see 18 U.S.C. § 1114; four counts of attempted murder, see 18 U.S.C. §§ 1113, 1153; nine counts of the use of a firearm during commission of a crime of violence, see 18 U.S.C. § 924(c); and five counts of destruction of government property. See 18 U.S.C. § 1361. All counts also charged him with aiding and abetting the charged crimes under 18 U.S.C. § 2.

Montoya was taken to the Federal Medical Center in Rochester, Minnesota, for psychological evaluation, and was evaluated again upon his return to Wyoming. He was diagnosed as suffering from language and personality disorders as well as the effects of drug abuse. Both evaluations concluded that Montoya was capable of understanding the proceedings against him and assisting in his own defense. While in Rochester, Montoya attended a religious ceremony in a sweat lodge provided for practitioners of indigenous religions. At a hearing held to determine whether he was competent to stand trial, Montoya testified that spirits visited him through a medicine man who participated in the sweat lodge ceremony with him. The spirits told him not to accept a plea bargain in this case, but to fight the charges against him in order to bring public attention to police brutality on the reservation. As a consequence of this visitation, as well as discussion

with a jailhouse "lawyer" in Rochester, and his own belief that the public interest would be served by going to trial, Montoya rejected a plea agreement that would have resulted in a sentence of 28 years in prison.

Montoya was found competent to stand trial. He was acquitted on two counts of attempted murder of a federal officer. The jury deadlocked on the other attempted murder counts, but found Montoya guilty of the lesser included offenses of forcible assault of a federal officer and aggravated assault with a deadly weapon on all the attempted murder counts. He was found guilty as charged of all other counts. Because 18 U.S.C. § 924(c) provides that a second or subsequent conviction for the use of a firearm during commission of a crime of violence shall be punished by a prison sentence of twenty years, see Deal v. United States, 508 U.S. 129 (1993), Montoya was sentenced to five years imprisonment for the first § 924(c) count and twenty years for the other such counts, to run consecutively, for a total of 165 years in prison. The forcible assault and aggravated assault charges yielded an additional seventy-eight month sentence, for a total of over 171 years in prison.

On appeal, Montoya argues that he was not competent to stand trial, that the evidence was insufficient to sustain convictions on several of the counts against him, and that his sentence is so disproportionate to the severity of the crimes he committed as to constitute cruel and unusual punishment.

II

"A defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and a rational as well as factual understanding of the proceedings against him.'" Cooper v. Oklahoma, 64 U.S.L.W. 4255, 4257 (U.S. Apr. 16, 1996) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)) (internal brackets omitted). The burden is on the defendant to prove incompetence by a preponderance of the evidence. Id. at 4259. To support a finding of incompetence, the evidence must show that the defendant suffers from a "mental disease or defect rendering him unable to understand the nature and the consequences of the proceedings against him or to assist properly in his defense." United States v. Parsons, 967 F.2d 452, 455 (10th Cir. 1992). When the court holds a competency hearing, we reverse its finding only if it was "clearly erroneous or arbitrary." United States v. Crews, 781 F.2d 826, 833 (10th Cir. 1986).

Montoya tells us that the court clearly erred because the evidence adduced at the competency hearing showed that he refused the plea bargain offered by the government based on his conversations with the jailhouse "lawyer" and his visitation by spirits in the sweat lodge at Rochester. He points to expert testimony that his decision to reject the plea bargain was irrational because he felt bound to rely on the advice of the spirits and because of his personality disorder. Montoya argues that the district court erred in finding

him unfit to stand trial in the light of these facts, and because it is irrational to reject a plea that would reduce one's sentence by over 140 years.

Because the decision whether or not to plead guilty is of paramount importance, and tests the defendant's ability to communicate with counsel and assist in his own defense, Cooper, 64 U.S.L.W. at 4260, evidence surrounding a defendant's decision not to accept a plea bargain is relevant to the competency determination. See id. The trial court heard expert testimony that Montoya's decision to reject the plea bargain was not the product of mental illness but of Montoya's anger at the way he had been treated by the police, and his belief that going to trial and bringing the issue to public attention might help protect others from police brutality. Montoya told the trial court that a jury, hearing of the events that provoked his attack, would acquit him. The expression of this opinion supports a finding that Montoya had a rational understanding of the role of the jury in the process and that he could assist in his own defense by offering mitigating testimony. Other evidence suggested that Montoya understood the process. For example, he understood the roles of the judge, jury, lawyers, and witnesses, and understood the potential consequences of refusing a plea bargain.

Montoya alleged that, as a child, he spoke with an imaginary friend, and as an adult, he claimed to have conducted secret missions in Bosnia and Iraq for the federal government. However, there was no evidence that this history, if true, demonstrated a present impairment rendering him incompetent. Montoya also asked the district court to

find that his heeding the advice of the spirits with regard to the plea bargain was proof of incompetence. The district court was right to refuse this invitation to indulge in cultural bias against Montoya's religion. There was no evidence that Montoya's sweat lodge experiences resulted from a "mental disease or defect." Parsons, 967 F.2d at 455.

The trial court's ability to directly observe the defendant puts it in a superior position to make the competency determination. See id.; see also Thompson v. Keohane, 116 S. Ct. 457, 466 (1995). Having observed defendant's testimony and reviewed all evidence firsthand, the trial court did not clearly err in finding Montoya competent to stand trial.

III

Federal criminal law does not recognize the distinction between aiding and abetting liability and liability as a principal. A defendant who is guilty of "aiding and abetting" at common law is guilty as a principal. 18 U.S.C. § 2; see Nye & Nissen v. United States, 336 U.S. 613, 618-19 (1949). Therefore, in order to sustain a conviction, the government need prove only that the defendant "knowingly associated [him]self in some way with the criminal venture" and took some action to make it succeed. United States v. King, 936 F.2d 477, 481 (10th Cir.) (quotation omitted), cert. denied, 502 U.S. 1008 (1991). Aiding and abetting has a "broader application" than liability based on a criminal conspiracy, Nye & Nissen, 336 U.S. at 620, in that anyone who "aids, abets,

counsels, commands, induces or procures" another's participation in a criminal act is guilty as a principal. 18 U.S.C. § 2(a).

Reviewing a claim of insufficient evidence, we view the record in the light most favorable to the government, and affirm if a reasonable jury could find the defendant guilty beyond a reasonable doubt. United States v. Esparsen, 930 F.2d 1461, 1470 (10th Cir. 1991), cert. denied, 502 U.S. 1036 (1992). Montoya points to the government's concession that, as to several of the counts, it could not prove exactly which attacker fired which shot, and argues that the evidence is insufficient to sustain his conviction with regard to Counts 5, 6, and 9 through 23 of the indictment. We agree with the government that the evidence presented was sufficient for a reasonable jury to conclude beyond a reasonable doubt that the three attackers had a shared intent to commit the offense, and that Montoya induced or procured the juveniles' assistance in the commission of the offense. See 18 U.S.C. § 2(a).

One of Montoya's accomplices who had struck a plea bargain with the government testified that the accomplice knew that Montoya was angry with the BIA police. On the night of the attack on the Fort Washakie police station, Montoya took the juveniles for a drive around the reservation. In the vehicle were several firearms, including assault rifles. An FBI agent read to the jury a statement by Montoya that "[w]hile driving around, I decided to retaliate against the BIA police." Montoya drove to a point near the police station, stopped the vehicle, and offered the juveniles an opportunity to get out.

- 7 -

Montoya's statement to the FBI indicated that he told the juveniles "that I was going to get back at the police and that they could get out of the car if they wanted." They declined.

When Montoya started firing on vehicles in the police station parking lot, one of the juveniles joined him. The juvenile testified that he had no prior intent to attack the police and started shooting at the station because Montoya was doing so. Montoya told that juvenile to get back into the vehicle and drive, which he did. At Montoya's instruction, the trio proceeded south on the main highway toward Lander, Wyoming. While one juvenile drove and fired some shots, the other helped Montoya continue shooting by reloading his firearms.

In the light of this evidence, the jury was entitled to believe beyond a reasonable doubt that the three attackers shared an intent to commit the crimes, and that Montoya induced or procured the juveniles' assistance and participation in the attack.

IV

Montoya argues that his sentence of over 170 years in prison is so disproportionate to the crime as to violate the Eighth Amendment's prohibition against cruel and unusual punishment. "Cruel and unusual punishment" includes "sentences that are disproportionate to the crime committed." Solem v. Helm, 463 U.S. 277, 284 (1983). We review questions of constitutional law de novo. Patton v. TIC United Corp., 77 F.3d 1235, 1243 (10th Cir. 1996).

Reviewing claims that a sentence is disproportionate to the crime, we are to "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." Solem, 463 U.S. at 290. In this case, the trial court did not exercise any discretion. The sentence was driven by the mandatory minimum provisions of 18 U.S.C. § 924(c).

We have previously refused to decide whether Harmelin v. Michigan, 501 U.S. 957 (1991), overruled Solem's proportionality analysis. See United States v. Robertson, 45 F.3d 1423, 1447 (10th Cir.), cert. denied 116 S. Ct. 133 (1995); United States v. Angulo-Lopez, 7 F.3d 1506, 1510 (10th Cir. 1993) (refusing to decide whether Harmelin overruled Solem because it was not necessary to resolve the case), cert. denied 114 S. Ct. 1563 (1994). Even under Solem, however, we believe that the sentence imposed in this case was not so disproportionate as to violate the Eighth Amendment.

Solem mandates that a reviewing court, as a threshold inquiry, "look to the gravity of the offense and the harshness of the penalty." 463 U.S. at 290-91. The court looks to case law to help determine whether there is a lack of proportion between gravity and harshness. See id. at 297 (under threshold inquiry, comparing defendant's sentence to that of defendant in Rummel v. Estelle, 445 U.S. 263 (1980)). If the court is left with a sense that the penalty is disproportionate, it may find it "helpful" or "useful" to compare the sentence to those imposed on other criminals in the same or other jurisdictions.

Solem, 463 U.S. at 291-92; see also Harmelin, 501 U.S. at 1004-05 (Kennedy, J., concurring) (courts should engage in Solem comparative analysis only when court does not find the sentence proportionate under the threshold inquiry).

A sentence of over 170 years in prison is harsh: we treat it as if it were a sentence of life without possibility of parole. Compared to crimes for which the Supreme Court has found a life sentence proportionate, Montoya understates the gravity of the offenses for which he has been convicted. The court has found proportionate a life sentence with possibility of parole, imposed under a recidivist statute for a third non-violent felony conviction, when the total loss from the three crimes was under $250. Rummel, 445 U.S. at 265-67. In Harmelin, three justices held that a sentence of life without possibility of parole for possession of over 650 grams of cocaine was proportionate because studies show that violence is associated with cocaine distribution. 501 U.S. at 1002-03 (Kennedy, J., concurring). See also Solem, 463 U.S. at 292-93 ("nonviolent crimes are less serious than crimes marked by violence or the threat of violence").

Montoya emphasizes the jury's decision not to convict him of attempted murder, and advances it as proof that he had no intent to kill. Noting that his sentence is functionally equivalent to life without parole, he argues that his lack of murderous intent makes his sentence disproportionate. It is true that the Supreme Court has found a sentence of death disproportionate when the state could not prove the defendant had any intent to kill. Enmund v. Florida, 458 U.S. 782, 798 (1982). However, that opinion

emphasized the uniqueness of the death penalty in its "severity and irrevocability." Id. at 797 (quoting Gregg v. Georgia, 428 U.S. 153, 187 (1976)).  By its own language, Enmund applies only to death penalty cases.  Under Harmelin, intent to kill is not a necessary prerequisite for a sentence of life without parole.  See 501 U.S. at 1004 (Kennedy, J., concurring) (a sentence of life without parole imposed on one who had no intent to kill may be proportionate under the Eighth Amendment) (citing Solem, 463 U.S. at 290 n.15).  See also Harmelin, 501 U.S. at 965 (plurality opinion) ("the Eighth Amendment contains no proportionality guarantee").  It is sufficient that Montoya intended to use firearms to assist him in his assault.

Montoya has been convicted of shooting at a total of nine individuals, including federal and local police officers.  Only providence prevented loss of life.  In the light of the Supreme Court case law discussed above, and giving appropriate deference to Congress, we cannot say that the penalty in this case is "significantly disproportionate to the crime, and is therefore prohibited by the Eighth Amendment."  Solem, 463 U.S. at 303; see also Harmelin, 501 U.S. at 1004-05 (Kennedy, J., concurring) (reviewing court may find proportionality solely on basis of initial Solem inquiry).

This is a sad case.  The trial court's remarks at sentencing eloquently state the difficulty in imposing a sentence, calculated mechanically and imposed without regard to the particular circumstances of the crime or the possibility of mercy:

> I've stated for the record, if I had been sentencing you, I would have sentenced you to forty years.  That would have guaranteed or at least given you some assurance

that if you'd taken care of yourself while incarcerated, you could die at home as an old man on the reservation. And I would have done that because you would have served a severe sentence. Allowing you to die at home on the reservation would have been the compassionate thing to do. But compassion is not within my control, not in this sentencing procedure.

ROA v. XIX, pp. 41. Because Montoya was convicted in accordance with law, and his sentence, mandated by statute, comports with Eighth Amendment precedent, the judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge