**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 1 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICKY LEE McDONALD,

Defendant - Appellant.

No. 01-2348

(D.C. No. CR-99-566-JC)

(D. New Mexico)

**ORDER AND JUDGMENT** *

Before **TACHA,** Chief Judge, **LUCERO** , and **HARTZ** , Circuit Judges.

A jury convicted Defendant of arson of a Planned Parenthood clinic, in violation of 18 U.S.C. § 844(i). The sole issue on appeal is whether he was competent to stand trial. He contends that the district court applied the wrong legal standard for competency and that even if the correct standard was applied, the decision was clearly erroneous. We have jurisdiction under 28 U.S.C. § 1291 and Fed. R. App. P. 4(b). We affirm.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.      Background

Defendant was indicted on May 19, 1999. Noting Defendant's history of schizophrenia and his disorientation in conversation, defense counsel promptly moved for an evaluation of mental competency. On June 2 the magistrate judge ordered the evaluation, which was conducted by Susan B. Cave, Ph.D., a clinical psychologist. She reported that while "the irrational process of a thought disorder is still present in his thinking," Defendant had a "rational as well as factual understanding of the charges against him" and the "present ability to consult with counsel with a reasonable degree of rational understanding." Defense counsel did not challenge the report. On August 25, 1999, District Judge John E. Conway found Defendant competent to stand trial.

This was not Judge Conway's first exposure to questions of Defendant's competency. In 1995 and 1996, in a prior case, Judge Conway twice found Defendant incompetent and committed him to the United States Medical Center for Prisoners (USMCFP) for treatment to restore him to competency. After the second commitment Judge Conway found Defendant competent and accepted his guilty plea.

Returning to the present case, Defendant's mental competency became an issue again when on April 4, 2000, defense counsel filed a Second Unopposed Motion to Determine Mental Competency of Defendant. The motion stated that it

was precipitated by Defendant's "disruptive and bizarre" behavior at a pretrial hearing. On April 19, 2000, Judge Conway entered an order requiring a report responding to the following questions:

1. Does [Defendant] now have a rational as well as a factual understanding of the charges against him?

2. Does [Defendant] now have sufficient present ability to consult with his lawyer with a reasonable degree of factual understanding?

3. [I]s there a substantial probability that [Defendant] will attain these capacities in the foreseeable future?

Catherine H. Klee, Ph.D., performed the evaluation and reported that Defendant was "competent and able to understand legal proceedings and to properly assist in his own defense" despite "his occasional delusional verbalizations."

This time, however, defense counsel disputed the report. At the competency hearing on June 28, 2000, he called Defendant as a witness. After Defendant engaged in several incoherent and disruptive outbursts, both the prosecutor and Judge Conway agreed that Defendant was not competent. The court entered an order stating that "having observed and addressed [Defendant] in open court . . . [t]his court FINDS by a preponderance of the evidence that [Defendant] is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense." The court committed him "to the custody of the Attorney General for hospitalization and treatment . . . to determine whether there [was] a substantial probability that

in the foreseeable future" he would become competent. Defendant was sent to the USMCFP, where he was treated by Dr. James K. Wolfson.

Dr. Wolfson issued a thorough 24-page report, which summarized not only his care and observations of Defendant but also Defendant's legal and psychiatric history. Dr. Wolfson reported that by the end of treatment at the facility, which included administration of an antipsychotic medication that Defendant had not previously taken, Defendant "was able to stay on the topic for much longer periods of time," "tolerate sitting and listening to things he did not wish to hear," "communicate and articulate his views relatively clearly," "grasp and manipulate information presented to him," and "make rational decisions when he cho[se]." Dr. Wolfson wrote: "[Defendant's] illness may . . . somewhat distort his approach to the case," yet "[Defendant] can now demonstrate an understanding of the nature and consequences of the proceedings against him . . . [and] there has been a substantial improvement in his capacity to assist counsel." He concluded "with reasonable medical certainty, that [Defendant's] illness has been brought into sufficient remission that he has been restored to competence to stand trial . . . ." Accordingly, the warden of the USMCFP certified on March 28, 2001, that Defendant was competent.

The court conducted a competency hearing on May 1, 2001. Defense counsel again called Defendant as a witness. Direct, focused questions about the

case received reasonable answers. For example, when counsel asked if he had seen the superseding indictment, Defendant responded: "Yes, I've seen it. I understand it. It means more charges." In contrast, however, when counsel asked Defendant to describe the voices in his head or to describe how God spoke to him, he began to ramble incoherently. Once defense counsel finished direct examination, the prosecutor asked whether Defendant thought he could "sit quietly" when the prosecution presented its case. Defendant answered: "Yeah. Yes I do. I just want to get—go ahead and get—because the evidence points in my direction, so I'd like to get it taken care of." The prosecutor then asked "if [your counsel] told you he thought it would be better for you not to testify as a witness in your trial, could you respect his decision on that?" Defendant answered "Yes."

After Defendant's testimony, defense counsel stipulated to the admissibility of the Wolfson Report. In ruling on Defendant's competency, Judge Conway stated that, though "[h]e's a little irrational on some things . . . from the record I've got, from what he said today, he's competent to stand trial."

The court then arraigned Defendant on a superseding indictment. At one point during the arraignment, Defendant said, "[M]aybe I should get a different lawyer . . . ." In response to this suggestion, the following exchange took place between the court and Defendant:

Court:       As far as I'm concerned, [your attorney] is one of the very best lawyers in the state of New Mexico.

Defendant:   How many jury trials has he had in his record?

Court:       Oh, probably 50 to a hundred.

Defendant:   50 to a hundred.

Court:       At least.  So, not as many as I've had but he's had a lot.  He is—as I say, one of the most  . . . he's one of the most competent attorneys we've got.  He'll do everything he can and you'll be —

Defendant    Okay, he's fine.  If that's which one you want me to work with, I'll work with him.

The written order on the competency hearing and arraignment stated in

part:

[T]he court . . . finds the defendant competent to proceed to trial. The defendant is cognizant of the charges which have been filed against him, and he has indicated that he is ready to proceed to trial. Therefore, IT IS ORDERED:

1.    That the defendant is fully able to understand the charges filed against him and is competent to proceed to trial.

The trial began on June 26, 2001.  Presentation of evidence continued the next day and the jury returned its verdict on June 28.  Although defense counsel and Judge Conway both observed at the close of the first day of trial that Defendant was "talking to himself all the time," Defendant engaged in only one outburst.  When his attorney completed cross examination of the final government

witness, Defendant exclaimed: "[H]e forgot to ask a question I asked him to ask, to interpret. Interpret test tube babies." The court ignored Defendant and allowed the government to proceed to redirect examination. Following dismissal of the jury, Defendant continued to argue that defense counsel should have asked a question concerning "test tube babies." Defense counsel stated that despite reserved behavior during the trial, this outburst was a "window" into Defendant's "state of mind" and that he was "not able to consult with a reasonable degree of rational understanding." Nevertheless, counsel made no request for reconsideration of whether Defendant was competent.

The jury convicted Defendant on one count and was unable to reach a verdict on three counts relating to a separate fire. After the jury returned the verdict and Defendant was removed from the room, Judge Conway explained to the jury that the marshals in the courtroom during trial were there as a precaution because of prior disruptive behavior by Defendant. He then outlined Defendant's past mental instability and said: "What you have to do is be competent to understand what's going on, and he's competent to understand what's going on. He may be a little off on some other things or have these other strong feelings about stuff, but he's competent to understand what's happening here in the courtroom, and that's the standard we go by."

II.    Discussion

A.    *Competency Standard Used by District Court*

We first address Defendant's contention that the district court employed the wrong legal standard in assessing his competency.  The test of a defendant's competency is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (internal quotation marks omitted).

Defendant claims that the district court focused solely on the second prong of the test, whether Defendant can understand the proceedings, while ignoring the first prong, whether Defendant can adequately consult with counsel.  This argument rests primarily upon the court's May 1, 2001 order.  Defendant asserts that the order "states that the finding [of competency] is based on the fact that [Defendant] is 'cognizant of the charges which have been filed against him, and he has indicated he is ready to proceed to trial.'"  Defendant also points to the judge's post-verdict comment to the jury:  "[H]e's competent to understand what's going on here in the courtroom, and that's the standard we go by."

We are not persuaded.  Although the court did not explicitly mention the capacity to consult with counsel in either the order or the post-verdict comment,

the balance of the record demonstrates that it applied the correct standard when it used the word "competent" in its order.

Judge Conway's order for a local competency examination stated both prongs of the competency test. All three of the ordered reports discussed both prongs. The second sentence of USMCFP's three-sentence certificate of competency states the two-prong test. Judge Conway's order for a commitment and evaluation at the USMCFP does not mention the second prong but states that Defendant is "unable to assist properly in his defense." We think it reasonable to presume that a judge knows a requirement of the law when he issues two orders stating the requirement and the sole documents presented for his review set forth the requirement.

Such a presumption can, of course, be rebutted by the record. But that is not the case here. We disagree with Defendant's contention that the court's misunderstanding of the test for competency is shown by the court's order entered after the competency hearing and arraignment. The order states in full:

> THIS MATTER came before the court for a competency hearing regarding [Defendant]. After hearing testimony of the defendant and argument from counsel, and having reviewed the psychological report provided to the court by the [USMCFP], the court agrees with the conclusions of the report and finds the defendant competent to proceed to trial. The defendant is cognizant of the charges which have been filed against him, and he has indicated that he is ready to proceed to trial.
>
> Therefore,

IT IS ORDERED:

1.     That the defendant is fully able to understand the charges filed against him and is competent to proceed to trial.

2.     The defendant is arraigned on the superseding indictment which was filed on April 19, 2001 (Doc # 56).

3.     Jury selection and jury trial shall be scheduled for Tuesday, June 26, 2001 at 8:30 a.m. [at the United States Courthouse].

Defendant reads paragraph 1 to say, "[T]he defendant is fully able to understand the charges filed against him and <u>therefore</u> is competent to proceed to trial." But the word "therefore" does not appear in the order. Perhaps the court's repeated mention that Defendant understood the charges is the consequence of Defendant's having been arraigned on a superseding indictment at the same proceeding. In any event, of greater importance is the court's statement that it "agrees with the conclusions of the [USMCFP] report," which set forth both prongs of the competency test. No doubt the order could have been drafted to eliminate any ambiguity, but there was no reason for the district court to anticipate the present challenge to its ruling. It was enough for the court simply to find Defendant "competent to proceed to trial," using the single word "competent" to encompass both prongs of the competency test that was well-known to the court. We note that neither party sought clarification of the order.

As for the court's post-trial comment to the jury, we give little weight to an impromptu oral remark to a lay audience uttered eight weeks after the competency hearing. In sum, we are confident that the experienced trial judge applied the proper test for competency. *Cf. Bratcher v. Bray-Doyle Independent School Dist. No. 42*, 8 F.3d 722, 724 (10th Cir. 1993) (appellate court presumes that district court knew what was required by de novo review); *United States v. Cataldo*, 171 F.3d 1316, 1320 n.6 (11th Cir. 1999) ("we do not assume that the district judges do not know the law").

B.      *Factual Basis for Competency Ruling*

Alternatively, Defendant contends that even if the district court applied the proper test for competency, the competency finding was in error because he could not meaningfully interact with counsel. (Defendant concedes that he possessed a rational as well as factual understanding of the proceedings against him.) "Competency to stand trial is a factual determination that can be set aside only if it is clearly erroneous." *United States v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998). The district court's decision was not clearly erroneous.

The very thorough USMCFP report explained in detail the basis of its conclusion that Defendant could consult with his lawyer with a reasonable degree of rational understanding. The report described how Defendant could "stay on the topic," "tolerate . . . listening to things he did not wish to hear," "communicate

and articulate his views relatively clearly," "grasp and manipulate information presented to him," and "make rational decisions when he chooses." These expert conclusions, supported by five months of observation, provide a firm foundation for the district court's May 1, 2001 findings.

Defendant's behavior at the competency hearing causes concern but does not undermine the court's ruling. His incoherent comments were elicited primarily by general questions that had little to do with his ability to cooperate with counsel. Although these comments reveal aspects of Defendant's persistent mental illness, "[t]he presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to . . . aid and assist in his own defense." *Miles v. Dorsey*, 61 F.3d 1459, 1472 (10th Cir. 1995) (internal quotation marks and citation omitted). The district court, which had previously rejected a mental evaluation of Defendant and found him incompetent based on his conduct at a competency hearing, was in a far better position than we to evaluate the significance of Defendant's behavior in the courtroom. *See United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000) (noting that defendant's demeanor and comportment in court are proper factors in assessing competency).

Defendant also argues that his conduct at trial demonstrated an inability to "consult with counsel with a reasonable degree of rational understanding." Yet his conduct at trial was less disruptive than anticipated by the district court, and his

one outburst was no more incoherent than his remarks at the competency hearing. Despite noting persistent psychoses that could affect his approach to the case, all three competency reports stated that Defendant could still consult with his attorney with a rational degree of understanding. If anything, Defendant's relatively good behavior at trial would confirm the court's prior evaluation of his competency. The court was not presented with any specific instances of an inability of Defendant to communicate satisfactorily with his attorney.

"Obviously we must rely heavily on the discretion of the district court in applying [the mental competency] standard to the defendant." *United States v. Parsons*, 967 F.2d 452, 455 (10th Cir. 1992). The exercise of that discretion in this case was not clearly erroneous. Accordingly, we AFFIRM Defendant's conviction.[1]

Entered for the Court

Harris L Hartz
Circuit Judge

---

[1]Also, we grant Defendant's Unopposed Motion to Supplement the Record.