**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 5 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SUSANNE MARIE ALLEN, also
known as Susanne Marie (nee) Austin,

    Defendant - Appellant.

No. 03-4288
(D.C. No. 2:01-CR-828-PGC)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **MURPHY** and **McCONNELL**, Circuit Judges.

---

From 1994 to 2001, Defendant Susanne Allen, a nurse practitioner, owned

and operated a medical clinic in rural Grantsville, Utah. Based on the Medicare

billing practices at the clinic during 1999, Defendant was charged in a second

superceding indictment with five counts of knowingly aiding and abetting the

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

presentation of false claims to the federal government in violation of 18 U.S.C. §§ 2[1] & 287[2] (2000). Specifically, Defendant was charged with directing the clinic's billing clerks to submit five Medicare claims representing that Defendant performed medical services "incident to" a particular physician's services, when the physician in question had not yet started work at the clinic and had not directly supervised or been involved with those medical services. After a jury trial, Defendant was convicted on all counts, was sentenced to twelve months probation, and was ordered to pay $2,675.64 in restitution. Defendant now appeals her conviction.

This appeal raises three principal issues:

1.  Whether the district court abused its discretion when it admitted evidence pursuant to Rule 404(b) regarding other false medical claims prepared at Defendant's direction.

2.  Whether the district court erred in refusing to issue a jury instruction on the need for a false statement to be material to satisfy 18 U.S.C. § 287.

---

[1] 18 U.S.C. § 2 provides, in pertinent part, "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." The provision continues, "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

[2] 18 U.S.C. § 287 (2000) provides, in pertinent part, "Whoever makes or presents . . . to any department or agency [of the United States], any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title."

3. Whether the government presented sufficient evidence to support the jury's verdict that (a) the claims submitted by Defendant were false; and (b) Defendant submitted those claims knowingly.

We exercise jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, and we **AFFIRM** the judgment of the district court for the reasons stated herein.

## I.    Factual Background

From June 1999 until early December 1999, no physicians worked at the clinic that Defendant owned and operated. During that time, Defendant, a nurse practitioner, examined patients.

In May or June 1999, Alexander Del Castillo, a doctor living in Florida, signed an employment agreement to work at the clinic beginning in December 1999. According to his testimony at trial, Del Castillo ultimately arrived in Utah on December 7, 1999 and began work at the clinic on December 9, 1999; he was not involved in the treatment of patients in any capacity until that date. Although Del Castillo was not to begin work until December, at Defendant's direction his employment agreement with the clinic contained an effective date of July 1, 1999. Also at Defendant's direction, the clinic administrator instructed Del Castillo to list July 1, 1999 as the date that he began practicing at the clinic on an application to obtain credentials with Medicare.

Beginning in September or October 1999, well before Del Castillo actually started work at the clinic, Defendant instructed the clinic's billing clerks to submit claims under Del Castillo's name and provider number for medical services that Defendant, not Del Castillo, provided. Del Castillo never authorized Defendant to submit Medicare claims using his name and provider number for services performed prior to his arrival at the clinic, and Del Castillo was not aware that Defendant had done so.

At issue in this case are five claims submitted to Regence BlueCross BlueShield, the Medicare administrative contractor who adjudicates Part B Medicare claims[3] arising in the state of Utah. The claims were submitted under Del Castillo's name and provider number for services performed at the clinic on November 6, 8, and 11, 1999 and December 3 and 4, 1999.

## II. Rule 404(b) Evidence

Defendant argues that the court's admission of evidence regarding other false medical claims prepared at Defendant's direction unduly prejudiced the jury and violated Rule 404(b). We "review a district court's decision to admit

---

[3]According to evidence adduced at trial, Medicare Part B, also called supplementary medical insurance, primarily covers health care provider expenses—chiefly physician expenses. Medicare Part A, by contrast, primarily covers hospital expenses.

evidence under Fed. R. Evid. 404(b) for abuse of discretion." United States v. Kravchuk, 335 F.3d 1147, 1156 (10th Cir. 2003). To resolve Defendant's claim, we must first determine the contours of the ruling below, then analyze that ruling in the light of established precedent.

### A.    Ruling Below

Before and during trial, Defendant sought to exclude the testimony of a billing clerk at the clinic, Sherri Summers, and a doctor who practiced at the clinic from 1998 to 1999, Sheikh Saghir. The testimony that Defendant sought to exclude related to Defendant's efforts to alter the bills that the clinic would submit to Medicare for the services that Saghir performed for patients.

In response to Defendant's objection before trial to this testimony, the district court held that the testimony was offered for a proper purpose under Rule 404(b): absence of mistake. The court also found that the evidence was admissible under Rule 403, and noted that it would issue a limiting instruction to the jury. The court "reinforc[ed]" its ruling when Defendant renewed her objection during the trial to the testimony, noting that the probative value of the evidence was higher than originally estimated, as it had become clear during trial that Defendant was arguing that she had submitted the false claims as a result of mistake or accident. In accordance with its original ruling, the court issued a

limiting instruction immediately following Saghir's testimony. Each of these rulings is discussed in more detail below.

Ultimately, Summers testified that Defendant told her to increase the charges on Saghir's bills after he had signed them. Saghir testified that beginning in February 1999 Defendant confronted him, told him that he was underbilling Medicare for the services he provided, and demanded that he bill his services at a higher level (and correspondingly greater cost). Saghir also testified that in May 1999, he saw Defendant changing his bills after he had signed them.

### B.    Analysis

Evidence of other uncharged acts "is properly admitted under Rule 404(b) if four requirements are met: (1) the evidence was offered for a proper purpose under Fed. R. Evid. 404(b); (2) the evidence was relevant under Fed. R. Evid. 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, instructed the jury pursuant to Fed. R. Evid. 105 to consider the evidence only for the purpose for which it was admitted." United States v. Becker, 230 F.3d 1224, 1232 (10th Cir. 2000) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

In this case, the evidence of the other false claims meets each requirement. First, the evidence was offered for a proper purpose under Rule 404(b). Rule 404(b) provides that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). While the district court was somewhat imprecise in defining the exact purpose(s) for which it admitted this testimony,[4] it is clear that the

_____

[4]In addressing the issue before the start of trial, the court admitted Saghir's testimony for the purpose of showing motive and absence of mistake. Shortly afterward, the court admitted Summers' testimony to "show[] absence of mistake and so forth." In addressing the issue again, just before Saghir was to testify, the court stated that the evidence was "coming in to show the knowledge, absence of mistake, and . . . . accident." After Saghir's testimony, in a limiting instruction to the jury, the court stated that Saghir's testimony, and possibly that of other witnesses, was admitted for the limited purpose of determining "whether the defendant acted knowingly and intentionally and not because of some mistake or accident or other innocent reason with respect to those five specific charges that have been filed by the government."

Strictly speaking, the evidence seems most suggestive of an overarching "plan" to defraud Medicare or "knowledge" of how one might defraud Medicare. Fed. R. Evid. 404(b). The evidence is not as suggestive of an "absence of mistake or accident," since the overbilling fraud involving the level of services that Saghir provided to his patients represents a very different sort of fraud from the "incident to" misbilling at issue in this case. However, the distinction between the concepts of "motive," "plan,""knowledge," and "absence of mistake or accident" is at times a fine one, and the court's failure to define its ruling as precisely as it might have certainly does not rise to the level of an abuse of discretion. Cf. John W. Strong, <u>McCormick on Evidence</u> 659 (5th ed. 1999) (noting that the permitted uses for evidence of other crimes, wrong, or acts

(continued...)

- 7 -

testimony was not admitted to prove Defendant's character in order to show action in conformity therewith. Thus, the testimony does not run afoul of Rule 404(b).

Second, the evidence was relevant under Rule 401, which provides that evidence is relevant whenever it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. That Defendant had previously manipulated the Medicare billing system tended to show that Defendant submitted the false claims in the case at bar knowingly. Defendant's knowing submission of the claims in the case at bar was an element of the offense for which she was convicted—submitting false claims under 18 U.S.C. § 287. See United States v. Kline, 922 F.2d 610, 611 (10th Cir. 1990). Thus, the 404(b) evidence clearly shed light on a "fact . . . of consequence to the determination of the action." Fed. R. Evid. 401.

Third, the evidence was admissible under Rule 403, which allows the trial court "to exclude relevant evidence if its probative value is substantially outweighed by the danger of, among other things, unfair prejudice, confusion of the issues, or misleading the jury." United States v. Galloway, 937 F.2d 542, 548

---

[4](...continued)
enumerated in Rule 404(b) are not mutually exclusive).

(10th Cir. 1991). In this case, the evidence of other false claims was highly probative, as it suggested an overarching plan to defraud Medicare and/or knowledge of how such fraud might be accomplished. While Saghir and Summers testified to the same general sequence of events, their testimony related to different aspects of the events, thus alleviating concerns that their testimony may have been cumulative and therefore unfairly prejudicial.

Moreover, to the extent that the evidence of false claims was unfairly prejudicial to Defendant, the district court issued a limiting instruction to the jury—thereby meeting the fourth of the <u>Huddleston</u> requirements. Because each of the <u>Huddleston</u> requirements was met, we cannot say that the district court abused its discretion in admitting the testimony of Summers and Saghir.

## III. Materiality

Defendant argues that the district court erred when it refused to instruct the jury that the false statements made in the Medicare claims must have been material in order to convict Defendant of submitting false claims to the federal government in violation of 18 U.S.C. § 287. We review the propriety of jury instructions <u>de novo</u>. <u>United States v. Fredette</u>, 315 F.3d 1235, 1240 (10th Cir.), <u>cert denied</u>, 538 U.S. 1045 (2003). To resolve Defendant's claim, we must first determine whether materiality is an element of the offense in this circuit; if it is

not, we must then address whether the failure to instruct the jury on the issue constitutes reversible error.

We have held that materiality is not an essential element of § 287. United States v. Irwin, 654 F.2d 671, 682 (10th Cir. 1981); see also United States v. Parsons, 967 F.2d 452, 455 (10th Cir. 1992). We are not alone in this determination: At minimum, materiality is not considered an element of the offense, not only in our circuit, but also in the Second, Fifth, and Ninth Circuits. See 2 Fed. Jury Prac. & Instr. § 30.03 (5th ed.) (2004) (citing Parsons, as well as United States v. Upton, 91 F.3d 677, 685 (5th Cir. 1996), United States v. Taylor, 66 F.3d 254, 255 (9th Cir. 1995), and United States v. Elkin, 731 F.2d 1005, 1009-10 (2d Cir. 1984), overruled on other grounds by United States v. Ali, 68 F.3d 1468 (2d Cir. 1995)).[5]

Since our decisions in Irwin and Parsons, the Supreme Court has reiterated that materiality is an element of an offense under 18 U.S.C. § 1001—a measure that was originally part of the same statute as 18 U.S.C. § 287. United States v.

_____

[5]There seems to be some discrepancy of opinion on what to make of the holdings of the various circuit courts on this issue. Compare 2 Fed. Jury Prac. & Instr. § 30.03, with James B. Helmer, Jr. & Julie Webster Popham, Materiality and the False Claims Act, 71 U. Cin. L. Rev. 839, 848 (2003) ("The circuit courts that have ruled on the criminal False Claims Act, 18 U.S.C. § 287—with the exception of one that has been vacated by the Supreme Court—have all found that it has no materiality requirement.") (footnotes omitted) (collecting cases). Regardless, it is clear that at least some circuits—including our own—have held that materiality is not an element of an offense under § 287.

Gaudin, 515 U.S. 506, 509 (1995). The Court also has held that materiality is an element of the federal mail fraud, wire fraud, and bank fraud statutes—18 U.S.C. §§ 1341, 1343, and 1344, respectively. Neder v. United States, 527 U.S. 1, 25 (1999). However, the Court has not moved uniformly to read a materiality requirement into all of the fifty-four sections of the U.S. Code criminalizing false statements that, like § 287, expressly lack such a requirement. United States v. Wells, 519 U.S. 482, 484, 493 n.14 (1997) (holding that the materiality of the falsehood is not an element of the crime of knowingly making a false statement to a federally insured bank pursuant to 18 U.S.C. § 1014). Thus, because the Supreme Court has not spoken conclusively on the issue, and because one Tenth Circuit panel cannot overturn the decision of a prior panel, we remain bound by our prior Tenth Circuit authority. In re Smith, 10 F.3d 723, 724 (10th Cir.1993).

Moreover, as the district court correctly noted, even if there had been any error in failing to instruct the jury on the element of materiality, that error was harmless, as in this case the false statements were clearly material. Cf. Neder, 527 U.S. at 19-20 ("[T]he omission of an element [in a jury instruction] is an error that is subject to harmless-error analysis . . . ."); see also Chapman v. California, 386 U.S. 18, 24 (1967) (defining the test for determining whether a constitutional error is harmless as whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"), overruled

- 11 -

in part by <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993) (holding that the <u>Chapman</u> standard is not applicable in habeas cases). Defendant received more money by billing under Del Castillo's name and provider number than she would have received if she had billed under her own name, so the false statements were "material" in that they had "a natural tendency to influence, or were capable of influencing, the decision of the decisionmaking body to which [they were] addressed." <u>Kungys v. United States</u>, 485 U.S. 759, 770 (1988). Because it appears clear that Defendant's statements were material, it appears beyond a reasonable doubt that the district court's failure to instruct the jury on the element of materiality was harmless.

## IV. Sufficiency of the Evidence

To support a conviction under 18 U.S.C. § 287, "there must be proof (1) that the defendant knowingly made and presented to a department or agency of the United States a *false, fraudulent or fictitious claim* against the United States, and (2) that the defendant *acted with knowledge* that the claim was false, fraudulent, or fictitious." <u>United States v. Kline</u>, 922 F.2d 610, 611 (10th Cir. 1990) (emphasis added). Defendant argues that there was insufficient evidence to support either requirement.

We review challenges to the sufficiency of the evidence to support a conviction de novo. United States v. Lazcano-Villalobos, 175 F.3d 838, 843 (10th Cir. 1999). In reviewing such challenges, we must determine whether any reasonable jury could find the defendant guilty beyond a reasonable doubt, viewing "all the direct and circumstantial evidence contained in the record and the reasonable inferences drawn from such evidence" in the light most favorable to the jury's verdict. United States v. Lang, 81 F.3d 955, 962 (10th Cir. 1996).[6] In all instances in which a jury's determination is called into question, we remember that "the jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." United Int'l Holdings v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1227 (10th Cir. 2000), aff'd, 532 U.S. 588 (2001). With this in mind, we address each of Defendant's contentions in turn.

---

[6]In connection with this issue, Defendant's brief discusses our standards for reviewing a district court's denial in a civil case of a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a). Rule 50(a) and the standard of review that depends on it are inapplicable in this criminal case.

### A. Falsity of the Claims

A reasonable jury could have determined that the evidence at trial established the falsity of the five Medicare claims submitted under Del Castillo's name and provider number. To bill under a physician's billing number, either the physician himself must perform the services, or a non-physician must perform services "incident to" the physician's services. To meet the "incident to" requirement, the physician must, inter alia, initiate the care of the patient and provide direct supervision of the non-physician's services. "Direct supervision" requires a physician to be on-site, able to assist immediately if necessary. (Id.)

The Medicare claims at issue in this case were for services provided on or before December 4, 1999. According to undisputed evidence adduced at trial, Del Castillo did not arrive in Utah until December 7, 1999, and did not begin work at the clinic until December 9, 1999. Del Castillo also testified that he was not involved in patient care in any way prior to his arrival at the clinic. Thus the jury reasonably could have determined that Del Castillo did not initiate the patients' care and was not on-site to supervise directly Defendant's services, and that the services were not performed "incident to" a physician's services as defined by Medicare regulations.

Even if the jury had credited Defendant's claims that the services were provided as part of a collaborative relationship with Del Castillo pursuant to a

consultation and referral plan, such claims may not have been enough for the jury to determine that the Medicare claims submitted under Del Castillo's name were anything but false. A Medicare claim may be submitted under a physician's name only when the physician provides the services personally or when the services are provided "incident to" the physician's services. When a nurse practitioner provides services pursuant to a collaborative relationship with a physician, she must bill under her own name and provider number, and cannot bill under a physician's name and number. Services billed under a nurse practitioner's name and number are reimbursed at a lower rate than "incident to" services. Thus, even if the services had been performed pursuant to a collaborative relationship with Del Castillo, the jury reasonably could have determined that the claims based on those services were false because the claims represented that the medical care had been performed "incident to" Del Castillo's services, resulting in a higher Medicare payment rate.

### B. Knowing Submission of the Claims

Sufficient evidence existed at trial from which a reasonable jury could have found beyond a reasonable doubt that Defendant knew that the Medicare claims were false. The evidence showed that Defendant had experience in billing for medical services; that she supervised and directed the billing for the clinic; and

that she had access to Medicare regulations and updates maintained in the clinic's billing office that set forth, inter alia, the requirements for "incident to" billing. Moreover, in early 1999 the clinic administrator told Defendant that the billing clerks had learned in Medicare training that a physician had to be physically present at the clinic in order to bill under that physician's name. Thus the jury reasonably could have determined that Defendant knew that the claims her clinic was submitting were false.

Further, Allen had knowingly submitted false medical claims of another type—the overbilling of Saghir's services. That Defendant had knowingly submitted the false claims related to Saghir's billing support a reasonably jury inference that she knew that the claims she submitted under Del Castillo's name were false.

Defendant argues that the evidence shows that she merely confused the requirements for billing "incident to" a doctor's services with the requirements for billing under a collaborative relationship, under which a physician need only at minimum be available for contact by telephone. The jury reasonably could have found that this claim was not credible in light of the evidence that Defendant had many years of experience with Medicare billing, had access to Medicare regulations and updates, was told by her staff that she could not bill incident to a

doctor's services when the doctor was not on-site, and had knowingly filed other false medical claims in the past.

Moreover, the jury reasonably could have concluded that even if Defendant had confused the requirements for the two types of billing, her billing practices were improper even under the billing for a collaborative arrangement. To bill pursuant to a collaborative physician arrangement, the physician must be available for consultation. Del Castillo testified that, prior to beginning work at the clinic, he was not available to Defendant for consultations. Del Castillo testified that he did sign a consultation and referral agreement, but that he most likely did so after his arrival at the clinic. Further, even if a collaborative relationship did exist, Medicare regulations require that such services be billed under the nurse practitioner's name and are paid at a lower rate. Thus, the jury reasonably could have determined that Defendant's arguments fail on their own terms.

## V.      Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge